488 So.2d 52 (1986)
Anthony Ray PEEK, Appellant,
v.
STATE of Florida, Appellee.
No. 66204.
Supreme Court of Florida.
April 17, 1986.
Rehearing Denied June 4, 1986.
*53 Edward S. Stafman, Tallahassee, for appellant.
Jim Smith, Atty. Gen. and Charles Corces, Jr., Asst. Atty. Gen., Tampa, for appellee.
PER CURIAM.
Anthony Ray Peek appeals his conviction on retrial for first-degree murder, sexual battery, and unauthorized use of a motor vehicle, and his sentence of death. We have jurisdiction. Art. V, § 3(b)(1), Fla. Const. We reverse his convictions and death sentence and remand for a new trial because of improper admission of evidence concerning another criminal offense committed by Peek.
Peek was previously convicted of first-degree murder, sexual battery, grand larceny, and burglary, and sentenced to death. This Court affirmed his conviction and sentence. Peek v. State, 395 So.2d 492 (Fla. 1980), cert. denied, 451 U.S. 964, 101 S.Ct. 2036, 68 L.Ed.2d 342 (1981). Subsequent to our affirmance, the trial judge granted Peek's motion under Florida Rule of Criminal Procedure 3.850 for post-conviction relief, finding, after an evidentiary hearing, that, in Peek's first trial, false expert testimony was presented concerning hair identification evidence and the testimony effectively denied Peek a fair trial. The state's appeal of this order was dismissed by a stipulation between the state and Peek with the provision that the state could retry Peek.
The record of Peek's retrial reflects that during the night of May 21, 1977, an elderly woman was raped and murdered in the bedroom of her Winter Haven home. The victim died of strangulation by a robe and part of a bedspread tied tightly around her neck. Her severely beaten body was strapped to a bedpost, and her bedclothes contained numerous blood and semen stains. Police investigation revealed that no fingerprints were in the victim's bedroom or her living room; that a cut piece of stocking containing a strand of hair was in the garage area; that the victim's two screen doors and telephone wires had been cut; and that the victim's car was missing.
Several hours after discovering the murder, the police found the victim's abandoned car in a park at Lake Martha, approximately one mile from her home. One car door was unlocked. On the inside of the car window, the police lifted two fingerprints and later identified them as belonging to Peek.
In addition to fingerprint evidence from the victim's car, the state attempted at trial to identify the assailant as Peek with the following evidence. First, blood and seminal fluid stains from the victim's bedclothes came from a type-O secretor, which was consistent with Peek's secretions. Second, the hair fragment had features similar to those found in Peek's negroid hair. Third, the state presented evidence showing that Peek, subsequent to the assault on the elderly woman, had admittedly raped a young woman. This latter collateral crime *54 evidence was not presented at the first trial.
Peek testified concerning the presence of his fingerprints in the victim's car. He stated that during the weekend of the murder he was restricted to a supervised halfway house near Lake Martha and that a house counselor permitted him to leave the house only on the morning of May 22 for breakfast. While eating at Lake Martha, Peek claimed that he saw the victim's car and attempted to burglarize it. He also offered testimony of two house counselors, who supported his statements by testifying that they made periodic bed checks after 11:00 p.m. on the murder night and that these inspections revealed no unauthorized absences and no opened windows or doors at the halfway house.
The jury found Peek guilty of all charges and, by a 9-3 vote, recommended imposition of the death penalty. Consistent with this recommendation, the sentencing judge sentenced Peek to death.
On appeal, Peek raises multiple issues concerning the guilt phase of his trial. We find dispositive Peek's claim that the admission in evidence of another criminal offense denied his constitutional right to a fair trial.
At trial, over Peek's objection, the trial court held that evidence of Peek's admission and conviction of a subsequent rape was similar in circumstances to the charged crime and therefore that this collateral crime evidence was admissible pursuant to our decision in Williams v. State,[1] and the Florida Evidence Code, section 90.404(2)(a), Florida Statutes (1983).[2] Peek contends that the details between the two crimes were not sufficiently similar to be relevant to the issue of identity. Peek argues that the collateral crime evidence lacked probative value, was presented only to show Peek's bad character or criminal propensity, and, consequently, was inadmissible.
In Williams, Justice Thornal explained the circumstances under which a defendant's commission of a separate crime may be admitted into evidence. He stated that, although similar fact evidence of other crimes is generally admissible when relevant to prove a material fact in issue, an exception to the broad rule of admissibility exists "where the sole relevancy is character or propensity of the accused." Id. at 663. In this landmark case, Williams was charged and convicted of rape. The victim had parked in the Webb's City parking lot and, after she had returned to her car and driven a short distance, Williams appeared from the car's back seat, grabbed the woman, and sexually assaulted her. At trial, the state offered evidence of another incident that occurred in the same parking lot, at approximately the same hour of the evening, six weeks prior to the attack on the victim. In that collateral crime, a young woman, upon opening her car door, discovered Williams hiding on the floor of the car's back seat. When she screamed, two policemen rescued her and arrested Williams. Under these circumstances, this Court concluded that the similar fact evidence was admissible.[3]
*55 Collateral crime evidence, however, is not relevant and admissible merely because it involves the same type of offense. In a second Williams v. State decision, 117 So.2d 473 (Fla. 1960), involving a different defendant, this Court rejected the use of collateral crime evidence, holding that where the defendant was charged with robbery and murder the admission of collateral crime evidence involving another robbery committed by the defendant "was so disproportionate to the issues of sameness of perpetrator and weapon of design that it may well have influenced the jury to find a verdict resulting in the death penalty." Id. at 476. Recently, in Drake v. State, 400 So.2d 1217 (Fla. 1981), we rejected the use of collateral crime evidence to establish the defendant's identity. Drake was charged with murder and rape of a victim whose hands were tied behind her back. The collateral crime evidence was that on two prior occasions Drake "had sexually assaulted two different women and had, during the course of those assaults, bound his victims' hands behind their backs." Id. at 1218. This Court noted that
[a] mere general similarity will not render the similar facts legally relevant to show identity. There must be identifiable points of similarity which pervade the compared factual situations. Given sufficient similarity, in order for the similar facts to be relevant, the points of similarity must have some special character or be so unusual as to point to the defendant.
Id. at 1219. In Drake, the Court held the similarities and uniqueness of the compared factual situations were insufficient to allow admissibility of the collateral crime evidence and that "the similar facts evidence ... tend[ed] to prove only two things  propensity and bad character." Id.
In applying the Williams rule and its progeny to this case, we find that the principal similarities between the two crimes were that they occurred in Winter Park within two months of each other and that both victims were white females and were raped. The dissimilarities greatly outnumber the similarities. In this rape and murder case, the victim was elderly, and the assailant (1) strangled and severely beat the victim; (2) tied the victim to a bedpost; (3) gained entry by cutting a screen door; (4) cut the telephone wires outside the victim's home; and (5) committed the crime during darkness. In the collateral crime, the victim was a young woman, and Peek (1) did not strangle or beat the victim; (2) failed to bind the victim; (3) did not force entry into the victim's home; (4) left telephone lines outside the house intact; and (5) committed his crime during daylight. We find fewer similarities in the compared factual situations of this case than were evident from the record in Drake, and we conclude, as we did in Drake, that significant dissimilarities exist between the collateral crime and the charged crime. In so holding, we are finding that the crimes' common points are not so unusual as to establish "a sufficiently unique pattern of criminal activity to justify admission of [the collateral crime] evidence." Chandler v. State, 442 So.2d 171, 173 (Fla. 1983) (finding unique pattern of criminal activity admissible). If we held the testimony concerning Peek's collateral crime admissible under these circumstances, any collateral crime evidence would be admissible as long as the crimes were of the same type and were committed within the same vicinity.
The explanation for excluding this type of evidence was set forth in Jackson v. State, 451 So.2d 458 (Fla. 1984), where we quoted with approval the Third District Court of Appeal's comment in Paul v. State, 340 So.2d 1249, 1250 (Fla. 3d DCA 1976), cert. denied, 348 So.2d 953 (Fla. 1977):
There is no doubt that this admission [to prior unrelated crimes] would go far to convince men of ordinary intelligence that the defendant was probably guilty of the crime charged. But, the criminal law departs from the standard of the ordinary in that it requires proof of a particular crime. Where evidence has no relevancy except as to the character and *56 propensity of the defendant to commit the crime charged, it must be excluded.
Jackson, 451 So.2d at 461 (citation omitted). Our justice system requires that in every criminal case the elements of the offense must be established beyond a reasonable doubt without resorting to the character of the defendant or to the fact that the defendant may have a propensity to commit the particular type of offense. The admission of improper collateral crime evidence is "presumed harmful error because of the danger that a jury will take the bad character or propensity to crime thus demonstrated as evidence of guilt of the crime charged." Straight v. State, 397 So.2d 903, 908 (Fla. 1981).
Although we find the collateral crime evidence was prejudicial in this case and should have been excluded, we reject appellant's contention that, absent this evidence, insufficient evidence exists to sustain a conviction.
Because of our decision on the Williams rule issue, we need not discuss the other issues raised by the appellant, with the exception of one matter. For future guidance of the bench, we believe that we should address the circumstances requiring the original trial judge in this case to disqualify himself after the completion of the guilt phase of the trial. That disqualification resulted from comments made by the trial judge immediately after the appellant was convicted and as the trial judge and attorneys were discussing procedure for the penalty phase. The defense attorney stated the trial judge commented: "Since the nigger mom and dad are here anyway, why don't we go ahead and do the penalty phase today instead of having to subpoena them back at cost to the state." Another person heard the comment as: "Since the niggers are here, maybe we can go ahead with the sentencing phase." As a result of these statements, the defendant moved to disqualify the trial judge. The trial judge disqualified himself from the penalty phase and the chief judge of the circuit presided for the remainder of the trial.
Trial judges not only must be impartial in their own minds, but also must convey the image of impartiality to the parties and the public. Judges must make sure that their statements, both on and off the bench, are proper and do not convey an image of prejudice or bias to any person or any segment of the community. This type of conduct is required of our judiciary because "every litigant ... is entitled to nothing less than the cold neutrality of an impartial judge." State ex rel. Mickle v. Rowe, 100 Fla. 1382, 1385, 131 So. 331, 332 (Fla. 1930). We write about this incident to emphasize the need for all judges to be constantly vigilant about their comments and demeanor both inside and outside the courtroom to assure that their impartiality may not "reasonably be questioned." Code of Judicial Conduct, Canon 3 C(1).
Accordingly, we vacate Peek's convictions and sentence and remand the cause for a new trial.
It is so ordered.
BOYD, C.J., and OVERTON, McDONALD, EHRLICH and SHAW, JJ., concur.
ADKINS, J., dissents.
NOTES
[1] 110 So.2d 654 (Fla.), cert. denied, 361 U.S. 847, 80 S.Ct. 102, 4 L.Ed.2d 86 (1959).
[2] Section 90.404(2)(a) codifies Williams v. State and provides:

Similar fact evidence of other crimes, wrongs, or acts is admissible when relevant to prove a material fact in issue, such as proof of motive, opportunity, intent, preparation, plan, knowledge, identity, or absence of mistake or accident, but is inadmissible when the evidence is relevant solely to prove bad character or propensity.
[3] Other cases in which this Court has held collateral crime evidence as admissible include Chandler v. State, 442 So.2d 171 (Fla. 1983); Mason v. State, 438 So.2d 374 (Fla. 1983), cert. denied, 465 U.S. 1051, 104 S.Ct. 1330, 79 L.Ed.2d 725 (1984); Ferguson v. State, 417 So.2d 631 (Fla. 1982); McCrae v. State, 395 So.2d 1145 (Fla. 1980), cert. denied, 454 U.S. 1041, 102 S.Ct. 583, 70 L.Ed.2d 486 (1981); Smith v. State, 365 So.2d 704 (Fla. 1978), cert. denied, 444 U.S. 885, 100 S.Ct. 177, 62 L.Ed.2d 165 (1979); Wilson v. State, 330 So.2d 457 (Fla. 1976); Dean v. State, 277 So.2d 13 (Fla. 1973); Ashley v. State, 265 So.2d 685 (Fla. 1972); Williams v. State, 247 So.2d 425 (Fla. 1971); and Bryant v. State, 235 So.2d 721 (Fla. 1970).