501 So.2d 1376 (1987)
Donald GARRETTE, Appellant,
v.
STATE of Florida, Appellee.
No. BJ-254.
District Court of Appeal of Florida, First District.
February 10, 1987.
Michael E. Allen, Public Defender, David A. Davis, Asst. Public Defender and Pamela D. Presnell, Legal Intern, Tallahassee, for appellant.
Jim Smith, Atty. Gen., and Royall P. Terry, Jr., Asst. Atty. Gen., Tallahassee, for appellee.
THOMPSON, Judge.
Garrette appeals his convictions for the crimes of sale of marijuana and possession of marijuana. His principal contention on appeal is that the trial court erred in allowing the State to introduce "William's Rule"[1] evidence relating to his involvement in other marijuana offenses. We agree and reverse.
The State's direct evidence tending to prove that Garrette was the person who committed the instant offenses was limited to a small amount of marijuana which was packaged in a plastic bag from which no usable fingerprints could be obtained, plus the testimony of undercover police officer Davis that Garrette was the person who sold her the bag of marijuana for the sum *1377 of $20. Davis testified that she and her partner had been notified by a confidential informant that a person named Gerald Wade and a man known as "Sleepy" were selling marijuana, and that she thereafter accompanied the confidential informant to Wade's residence for the purpose of making a buy. She indicated that after she and the informant arrived at Wade's residence and told him what they wanted, he called "Sleepy" out of the house and that all four persons then repaired to a shed in the backyard of the residence. There, "Sleepy" pulled a bag of marijuana out of a paint can and sold it to her. At trial, Officer Davis positively identified Garrette as the person called "Sleepy" who sold her the marijuana. She also gave evidence concerning her investigative efforts leading to the discovery that the drug dealer who had been introduced to her as "Sleepy" was in fact the appellant Garrette, and she further testified that at the time she purchased the marijuana a green Lincoln Continental automobile was parked in the yard of Gerald Wade's residence. The testimony of Officer Davis' partner corroborated the fact that she had gone to Wade's residence and made a purchase of marijuana there, but because the partner parked his vehicle some distance away from Wade's house in order to remain out of sight during the transaction he was unable to give evidence as to the identity of the marijuana seller. Although on cross-examination of Officer Davis defense counsel was able to show that she did not have an absolutely crystal clear recollection of each and every detail of the marijuana purchase, her testimony identifying Garrette as the marijuana seller remained positive and unequivocal, and was substantially unimpeached.
Gerald Wade and the confidential informant involved in this case both testified on behalf of appellant. Both acknowledged that the marijuana sale had taken place more or less as Officer Davis described it, but both insisted that Garrette was not known by the street name "Sleepy" and was not the person who had sold the marijuana to Davis. Wade acknowledged that he was a friend of appellant's, and that appellant had occasionally been permitted to use the green Lincoln Continental which belonged to Wade's mother. The testimony of these defense witnesses, unlike the testimony of Officer Davis, was substantially impeached by prosecution evidence showing them both to be convicted felons and showing that both arguably had reason to be biased against the State.
The prosecutor sought to bolster his case by showing that on two other occasions, one occurring some seven months prior to the instant offense and one occurring some five months after, Garrette was found in possession of marijuana. The prior arrest of Garrette occurred when an informant (not shown to be the same informant involved in this case) tipped off police that Garrette could be found driving a green Lincoln Continental automobile in a certain neighborhood, and that he had marijuana either on his person or stored in the trunk of the car. The evidence concerning the subsequent arrest of appellant indicated that officers had stopped a green Lincoln Continental during their investigation of a disturbance call, and that upon stopping the car they found Garrette to be the driver and found plastic bags of marijuana on the front seat of the car next to the driver's seat. However, evidence of the subsequent arrest also showed that a passenger who was occupying the car with Garrette at the time it was stopped fled from the scene and was never identified.
The evidence of the subsequent collateral crime was admitted over defense counsel's vigorous objection that the collateral crimes were insufficiently similar to the crimes charged to have any relevance on the issue as to which the evidence was tendered, i.e., identity. The record before us fails to reflect whether appropriate objection was interposed upon the state's initial filing of notice of intent to introduce similar fact evidence, which notice apparently concerned only the prior offense. However, the state does not now argue that the objection was waived, but simply asserts that the admission of the evidence was not error, or was harmless. We reject *1378 the contention that the improper admission of collateral crime evidence can be deemed harmless in a case where the only evidence identifying the defendant as the perpetrator of the crime is the testimony of a single eyewitness, whether or not the eyewitness happens to be a police officer, see, Wilson v. State, 490 So.2d 1062 (Fla. 5th DCA 1986), and we conclude on the basis of the record as a whole that the issue of the admissibility of the collateral crime evidence was adequately preserved for review.
The Florida Evidence Code (at § 90.404(2)(a), Fla. Stat.) codifies the ruling in Williams v. State as follows:
Similar fact evidence of other crimes, wrongs, or acts is admissible when relevant to prove a material fact in issue, such as proof of motive, opportunity, intent, preparation, plan, knowledge, identity, or absence of mistake or accident, but it is inadmissible when the evidence is relevant solely to prove bad character or propensity.
This evidentiary rule has been the subject of numerous appellate decisions emphasizing the dangers of permitting jurors charged with determining guilt or innocence with respect to a particular crime charged to consider the fact that the defendant has committed other, similar crimes. Most recently, in Peek v. State, 488 So.2d 52 (Fla. 1986), our Supreme Court reviewed and quoted extensively from its prior decisions in the cases of Jackson v. State, 451 So.2d 458 (Fla. 1984), Chandler v. State, 442 So.2d 171 (Fla. 1983), Drake v. State, 400 So.2d 1217 (Fla. 1981), and Straight v. State, 397 So.2d 903 (Fla. 1981), among others, and concluded that collateral crime evidence "is not relevant and admissible merely because it involves the same type of offense." 488 So.2d at 55. The Peek court reiterated that the improper admission of collateral crime evidence is to be "presumed harmful," and repeated its prior statement that:
[a] mere general similarity will not render the similar facts legally relevant to show identity. There must be identifiable points of similarity which pervade the compared factual situations. Given sufficient similarity, in order for the similar facts to be relevant, the points of similarity must have some special character or be so unusual as to point to the defendant.
488 So.2d at 55.
The court emphasized that in determining whether to admit collateral crime evidence, the trial judge must consider both the similarities and the dissimilarities between the crime charged and the collateral crime.
Here, the crimes charged involved the possession and sale of a single "baggie" of marijuana. The transaction occurred in a shed near Gerald Wade's residence and in the presence of Wade and a confidential informant. A green Lincoln Continental automobile was shown to have been parked nearby when the sale took place. The prior arrest took place while Garrette was traveling alone in a green Lincoln Continental automobile at a location not shown to be any nearer to Wade's residence than somewhere in the same county. Although an informant's tip precipitated both the prior arrest and the instant arrest, it was not shown that the same informant was involved. The subsequent arrest also occurred while Garrette was occupying a green Lincoln automobile, but it took place at some location not shown to be either in the vicinity of Wade's residence or near the scene of the prior arrest. Although Garrette had a companion at the time of the subsequent arrest, the arrest did not occur as a result of an informant's tip and it was not shown that his companion was Wade or the confidential informant involved in this case. The most that can be said by way of pointing out similarities in the three offenses is that (1) all them involved, or allegedly involved, Mr. Garrette, (2) all of them appeared to have some connection with Gerald Wade via his relationship to the automobile and residence involved in the crimes, and (3) all involved marijuana wrapped in plastic bags. Dissimilarities include the facts that (1) the crimes occurred at different locations with intervals of approximately *1379 six months elapsing between each crime, (2) one of the crimes involved a sale of a small amount of marijuana while the other two crimes involved possession of larger amounts, (3) two of the crimes involved tips from informants which were made under different circumstances while the third involved no informant at all. In sum, the similarities between the crimes are that all three occurred within a year's time somewhere in or near Pensacola, Florida, that all occurred while Garrette allegedly was occupying a vehicle owned by Gerald Wade's mother or was on premises occupied by Wade, and that all involved possession of marijuana wrapped in plastic bags. This last "similarity," the packaging of marijuana in plastic bags, is, of course, so common as to amount to no similarity at all. These similarities certainly do not have any "special character" making them "so unusual as to point to the defendant," and they do not "pervade the compared factual situations." Again, we quote from Peek:
Our justice system requires that in every criminal case the elements of the offense must be established beyond a reasonable doubt without resorting to the character of the defendant or to the fact that the defendant may have a propensity to commit the particular type of offense.
488 So.2d at 56.
The collateral crimes evidence admitted here tended to prove bad character and a propensity of Garrette to commit marijuana offenses, but little else. The degree of similarity between the crimes charged and the collateral crimes did not even approach that level of similarity which would make the collateral crimes evidence sufficiently relevant on the issue of identity to warrant admission of the evidence.
Because we must reverse and remand for a new trial because of the erroneous admission of the collateral crimes evidence, we need not determine whether the prosecutor's improper remarks during closing argument would warrant reversal in and of themselves. Suffice it to say that a prosecutor may argue any reasons (if supported by evidence) why a given witness might or might not be biased in a case, but may not properly argue that a police officer must be believed simply because she is a police officer or that other witnesses called by the State should be believed because the prosecutor would not have called his witnesses to the stand if he could not vouch for their credibility.
REVERSED and REMANDED for new trial.
JOANOS and NIMMONS, JJ., concur.
NOTES
[1] Williams v. State, 110 So.2d 654 (Fla.), cert. denied, 361 U.S. 847, 80 S.Ct. 102, 4 L.Ed.2d 86 (1959).