533 So.2d 270 (1988)
Roy Clifton SWAFFORD, Appellant,
v.
STATE of Florida, Appellee.
No. 68009.
Supreme Court of Florida.
September 29, 1988.
Rehearing Denied December 2, 1988.
*271 James B. Gibson, Public Defender and Daniel J. Schaffer, Asst. Public Defender, Seventh Judicial Circuit, Daytona Beach, for appellant.
Robert A. Butterworth, Atty. Gen. and Belle B. Turner, Asst. Atty. Gen., Daytona Beach, for appellee.
PER CURIAM.
Roy Swafford appeals his convictions of first-degree murder and sexual battery and his death sentence. This Court has jurisdiction. Art. V, § 3(b)(1), Fla. Const. We affirm the convictions and sentence.
The evidence showed that on the morning of Sunday, February 14, 1982, the victim was at work at the FINA gas station *272 and store on the corner of U.S. Highway No. 1 and Granada Avenue in Ormond Beach, Florida. Two witnesses saw her there at 5:40 and 6:17 a.m. A third witness, who said he arrived at the station at around 6:20, found no attendant on duty although the store was open and the lights were on. At 6:27 a.m., the police were called, and an officer arrived at the station a few minutes later.
On February 15, 1982, the victim's body was found in a wooded area by a dirt road, about six miles from the FINA Station. She had been shot nine times, with two shots directly to the head. The cause of death was loss of blood from a shot to the chest. Based on trauma, lacerations, and seminal fluid in the victim's body, the medical examiner concluded that she had been sexually battered. Holes in the victim's clothing corresponding to the bullet wounds to her torso indicated that she was fully clothed when shot. The number of bullet wounds and the type of weapon used indicated that the killer had to stop and reload the gun at least once. Several bullets and fragments were recovered from the body.
Swafford and four companions drove from Nashville, Tennessee, to Daytona Beach, Florida, departing Nashville at about midnight on Friday, February 12 and arriving in Daytona Beach at about noon the next day. After setting up camp in a state park, Swafford and some others went out for the evening, arriving back at the campground at about midnight. Then, according to the testimony at trial, Swafford took the car and went out again, not to return until early Sunday morning.
State's witness Patricia Atwell, a dancer at a bar called the Shingle Shack, testified that Swafford was there with his friends on Saturday night, that they left at around midnight, and that Swafford returned alone at about 1:00 a.m. Sunday. When Atwell finished working at 3:00 a.m., she left the Shingle Shack with Swafford. They spent the rest of the night together at the home of Swafford's friend. At about 6:00 a.m., he returned her to the Shingle Shack and left, driving north on U.S. 1, a course that would have taken him by the FINA station. In the light traffic conditions of early Sunday morning, the FINA station was about four minutes away from the Shingle Shack. According to Swafford's travelling companions, he returned to the campsite around daybreak. The court took judicial notice of the fact that sunrise took place on the date in question at 7:04 a.m.
On Sunday Swafford and his friends attended an auto race in Daytona Beach. That evening they went back to the Shingle Shack, where one of the party got into a dispute with some other people over money he had paid in the expectation of receiving some drugs. Swafford displayed a gun and got the money back. The police were called, and Swafford deposited the gun in a trash can in one of the restrooms. The police seized the gun, and ballistics tests performed later conclusively established that Swafford's gun was the gun used to kill the victim. The evidence also showed that Swafford had had the gun for some time. Although the gun was not tested until more than a year after the murder, after authorities received a tip concerning Swafford's possible involvement, evidence established the chain of police custody and the identification of the gun.
The state also presented evidence that Swafford made statements from which an inference of his guilt of the crimes charged could be drawn. Ernest Johnson told of an incident that took place about two months after this murder. After meeting Swafford at an auto race track, Johnson accompanied him to his brother's house. When leaving the brother's house, Swafford suggested to Johnson that they "go get some women" or made a statement to that effect. Johnson testified as follows concerning what happened then:
Q. Okay. What happened then? What was said by the Defendant?
A. He just asked me if I wanted to go get some girl and I said yeah.
Q. And then what took place?
A. We got in  he asked me if I wanted to take my truck and I said no, so we went in his car.

*273 All right. We went and got a six-pack of beer and started riding. And he said, do you want to get a girl, and I said yeah, where do you want to get one, or something like that. He said, I'll get one.
So, as we was driving, I said, you know, where are you going to get her at. He said, I'll get her. He said  he said, you won't have to worry about nothing the way I'm going to get her, or he put it in that way. And he said  he said, we'll get one and we'll do anything we want to to her. And he said, you won't have to worry about it because we won't get caught.
So, I said, how are you going to do that. And he said, we'll do anything we want to and I'll shoot her.
So, he said if  you know, he said that he'd get rid of her, he'd waste her, and he said, I'll shoot her in the head.
I said, man, you're crazy. He said, no, I'll shoot her in the head twice and I'll make damn good and sure that she's, you know, she's dead. He said, there won't be no witnesses.
So, I asked him, I said, man, don't  you know, don't that bother you. And he said, it does for a while, you know, you just get used to it.
Johnson then told the jury that he and Swafford went to a department store parking lot late at night, that Swafford selected a victim, told Johnson to drive the car, directed him to a position beside the targeted victim's car, and drew a gun. Johnson at that point refused to participate further and demanded to be taken back to his truck.
The jury found Swafford guilty of first-degree murder and sexual battery and recommended a sentence of death. The trial court then sentenced Swafford to death for the first-degree murder.
The trial court admitted Johnson's testimony, under two separate theories, as similar fact evidence and as an admission of guilt. Swafford now argues that the trial court erred in admitting Johnson's testimony because it presented information about a collateral crime, wrong, or act that was not relevant to a material issue of fact, contrary to Williams v. State, 110 So.2d 654 (Fla.), cert. denied, 361 U.S. 847, 80 S.Ct. 102, 4 L.Ed.2d 86 (1959), and codified in subsection 90.404(2)(a), Florida Statutes (1985).[1] To support this theory, Swafford relies on Drake v. State, 400 So.2d 1217 (Fla. 1981), where this Court found the collateral events introduced by the state insufficiently similar to the facts of the crime charged to support comparison under the "mode of operating theory of proving identity." Id. at 1219. Swafford also relies on Peek v. State, 488 So.2d 52 (Fla. 1986), which found that, because a sufficiently unique pattern of criminality to justify a finding of identity based on the collateral crime did not exist, evidence of the collateral crime should have been excluded as irrelevant. Drake and Peek are not controlling in this case.
The state did not present Johnson's testimony to establish that Swafford had committed a separate crime so similar in the manner of its commission to the crime charged that it pointed, with logical relevancy, to Swafford as the perpetrator of the instant homicide because the statement did not refer to a crime that had been committed. Rather, it offered the testimony primarily to inform the jury of a particular statement made by Swafford. In response to Johnson's question whether he would not be "bothered" after abducting, raping, and murdering a victim selected in a parking lot, Swafford said "you just get used to it." Swafford's statement that "you just get used to it," when viewed in the context of his having just said that they could get a girl, do anything they wanted to with her and shoot her twice in the head *274 so there wouldn't be any witnesses, was evidence which tended to prove that he had committed just such a crime in Daytona Beach only two months before. An admission may be admissible if it is relevant, and relevant evidence is defined as evidence tending to prove or disprove a material fact. § 90.401, Fla. Stat. (1985). The trial judge properly permitted the jury to consider this evidence for what it was worth.[2]
An admission of a party-opponent is admissible as an exception to the hearsay evidence rule. § 90.803(18), Fla. Stat. (1985). In contrast to other hearsay exceptions, admissions are admissible in evidence not because the circumstances provide special indicators of the statement's reliability, but because the out-of-court statement of the party is inconsistent with his express or implied position in the litigation.[3]McCormick on Evidence § 262 (E. Cleary ed. 1984). The admissibility of admissions of a party has been recognized by numerous Florida decisions. E.g., Hunt v. Seaboard Coast Line R.R., 327 So.2d 193 (Fla. 1976); Roberts v. State, 94 Fla. 149, 113 So. 726 (1927); Parrish v. State, 90 Fla. 25, 105 So. 130 (1925); Daniels v. State, 57 Fla. 1, 48 So. 747 (1909); Dinter v. Brewer, 420 So.2d 932 (Fla. 3d DCA 1982); Darty v. State, 161 So.2d 864 (Fla. 2d DCA), cert. denied, 168 So.2d 147 (Fla. 1964).[4] Of course, like all evidence, an admission must be relevant; i.e., it must have some logical bearing on an issue of material fact. In the context of a criminal trial, an admission of the defendant is admissible if it tends in some way, when taken together with other facts, to establish guilt. 4 C. Torcia, Wharton's Criminal Evidence §§ 651-653 (14th ed. 1987); see, e.g., United States v. Venditti, 533 F.2d 217, 220 (5th Cir.1976) (admission was "open to the prosecutor's permissible suggestion of an adverse inference"); United States v. Nakaladski, 481 F.2d 289 (5th Cir.) (admission relevant to intent), cert. denied, 414 U.S. 1064, 94 S.Ct. 570, 38 L.Ed.2d 469 (1973); Myers v. State, 256 So.2d 400 (Fla. 3d DCA 1972) (admission capable of raising inference of guilt admissible); Ebert v. State, 140 So.2d 63, 65 (Fla. 2d DCA 1962) ("an admission of *275 guilt or of conduct from which guilt may be inferred" was admissible); Brown v. State, 111 So.2d 296, 298 (Fla. 2d DCA) (defendant's statement was "a declaration or admission of independent facts which might go to prove guilt or from which guilt might be inferred"), cert. denied, 114 So.2d 6 (Fla. 1959).
Swafford argues that even if his admissions are recognized as an exception to the hearsay rule, the evidence still must be tested against the restrictions embodied in the Williams rule because it showed the commission of a collateral crime or wrongful act. Williams, however, explicitly recognized the "general canon of evidence that any fact relevant to prove a fact in issue is admissible into evidence unless its admissibility is precluded by some specific rule of exclusion." 110 So.2d at 658. This Court also observed that "evidence which has a reasonable tendency to establish the crime laid in the indictment is not inadmissible merely because it points to another crime," id. at 663, and concluded that "evidence of any facts relevant to a material fact in issue except where the sole relevancy is character or propensity of the accused is admissible unless precluded by some specific exception or rule of exclusion." Id.
Since Williams we have acknowledged many times its basic teaching that evidence showing collateral crimes or wrongful acts is admissible if it is relevant for any purpose other than to show the bad character or criminal propensity of the accused. E.g., Craig v. State, 510 So.2d 857 (Fla. 1987), cert. denied, ___ U.S. ___, 108 S.Ct. 732, 98 L.Ed.2d 680 (1988); Medina v. State, 466 So.2d 1046 (Fla. 1985); Justus v. State, 438 So.2d 358 (Fla. 1983), cert. denied, 465 U.S. 1052, 104 S.Ct. 1332, 79 L.Ed.2d 726 (1984); State v. Statewright, 300 So.2d 674 (Fla. 1974); Bryant v. State, 235 So.2d 721 (Fla. 1970); Mackiewicz v. State, 114 So.2d 684 (Fla. 1959), cert. denied, 362 U.S. 965, 80 S.Ct. 883, 4 L.Ed.2d 879 (1960). The examples given in Williams and in subsection 90.404(2)(a) are not an exclusive list of the purposes for which such evidence can be found relevant. While Johnson's testimony certainly had the effect of casting Swafford in a bad light, it cannot be said that its sole relevancy was on the matter of character or propensity.[5]
The framework within which every evidentiary problem must be resolved entails an analysis of two related issues: relevance and materiality. To be admissible, evidence first must be relevant to a particular material issue to be proved. This basic framework is of special importance when the evidence to be admitted poses an unusual danger of unfair prejudice to an accused. See § 90.403, Fla. Stat. (1985).
Swafford also argues that his statement had little or no probative value and therefore should have been excluded because the damaging effect of the testimony improperly prejudiced him and outweighed any probative value. Swafford made the challenged statement in response to a serious question posed by Johnson following Swafford's concrete proposal of a criminal act. Although the proposal and solicitation were not similar enough to the crime charged to support a "similar facts" presentation under the modus operandi theory of Drake and Peek there was enough similarity to give probative value to Swafford's statement. We fail to see how Swafford's statement was unfairly prejudicial and therefore hold that the court properly admitted the testimony in question.
Next, Swafford argues that the trial court erred in excluding evidence the defense *276 sought to introduce. The defense called a person who had told the police that he had seen a man at the FINA station at 6:17 a.m. on the day of the crime, and the witness described from the stand the man he saw. The defense then sought to introduce a police bulletin and the testimony of the officer who had prepared it, suggesting that the bulletin and testimony would provide a better description of the person seen than the witness's recollection over three years later. The court excluded the bulletin and officer's testimony on the ground of hearsay.
Swafford claims that the police bulletin, derived from the witness' description of the man he saw, was not hearsay because it came within the exception for statements of identification under subsection 90.801(2)(c), Florida Statutes (1985). This position is erroneous because a description is not an identification. See, e.g., Hendrieth v. State, 483 So.2d 768, 769 (Fla. 1st DCA 1986). An "identification of a person after perceiving him," subsection 90.801(2)(c), is a designation or reference to a particular person or his or her photograph and a statement that the person identified is the same as the person previously perceived. The witness in this case never made an identification of the person he had seen; he only gave a description. This testimony does not meet the definition of "identification" as used in subsection 90.801(2)(c). See, e.g., State v. Freber, 366 So.2d 426 (Fla. 1978); Brown v. State, 413 So.2d 414 (Fla. 5th DCA 1982); Henry v. State, 383 So.2d 320 (Fla. 5th DCA 1980).
Swafford's remaining arguments pertain to the death sentence. First, he contends that the court erred in finding the murder to have been "committed for the purpose of avoiding or preventing a lawful arrest." § 921.141(5)(e), Fla. Stat. (1985). A motive to eliminate potential witnesses to "an antecedent crime" can provide the basis for this aggravating circumstance. Menendez v. State, 419 So.2d 312, 315 n. 2 (Fla. 1982). It is not necessary that an arrest be imminent at the time of the murder. See, e.g., Herring v. State, 446 So.2d 1049 (Fla.), cert. denied, 469 U.S. 989, 105 S.Ct. 396, 83 L.Ed.2d 330 (1984); Riley v. State, 366 So.2d 19 (Fla. 1978).
Although some decisions have approved findings of motive to eliminate witnesses based on admissions of the defendant, Kokal v. State, 492 So.2d 1317, 1319 (Fla. 1986); Bottoson v. State, 443 So.2d 962, 963 (Fla. 1983), cert. denied, 469 U.S. 873, 105 S.Ct. 223, 83 L.Ed.2d 153 (1984); Johnson v. State, 442 So.2d 185, 188 (Fla. 1983), cert. denied, 466 U.S. 963, 104 S.Ct. 2182, 80 L.Ed.2d 563 (1984), in others the factor has been approved on the basis of circumstantial evidence without any such direct statement.[6]Routly v. State, 440 So.2d 1257, 1263 (Fla. 1983) ("express statement" not required), cert. denied, 468 U.S. 1220, 104 S.Ct. 3591, 82 L.Ed.2d 888 (1984). While Swafford's statement to Johnson did not contain any clear reference to his motive for the murder specifically, the circumstances of the murder were similar to those in many cases where the arrest avoidance factor has been approved. E.g., Cave v. State, 476 So.2d 180, 188 (Fla. 1985) (evidence left "no reasonable inference but that the victim was kidnapped from the store and transported some thirteen miles to a rural area in order to kill and thereby silence the sole witness to the robbery"), cert. denied, 476 U.S. 1178, 106 S.Ct. 2907, 90 L.Ed.2d 993 (1986); Routly v. State, 440 So.2d at 1264 ("no logical reason" for the victim's abduction and killing "except for the purpose of murdering him to prevent detection"). Other cases have applied the same reasoning on similar facts. E.g., Burr v. State, 466 So.2d 1051 (Fla.), cert. denied, 474 U.S. 879, 106 S.Ct. 201, 88 L.Ed.2d 170 (1985); Martin v. State, 420 So.2d 583 (Fla. 1982), cert. denied, 460 U.S. 1056, 103 S.Ct. 1508, 75 L.Ed.2d 937 (1983); Griffin v. State, 414 So.2d 1025 (Fla. 1982).
*277 Next, Swafford argues that the trial court erred in finding the murder to have been "especially heinous, atrocious, or cruel." § 921.141(5)(h), Fla. Stat. (1985). In numerous cases the Court has held that this aggravating factor could be supported by evidence of actions of the offender preceding the actual killing, including forcible abduction, transportation away from possible sources of assistance and detection, and sexual abuse. See, e.g., Routly v. State, 440 So.2d at 1264; Lightbourne v. State, 438 So.2d 380, 391 (Fla. 1983), cert. denied, 465 U.S. 1051, 104 S.Ct. 1330, 79 L.Ed.2d 725 (1984); Smith v. State, 424 So.2d 726, 733 (Fla. 1982), cert. denied, 462 U.S. 1145, 103 S.Ct. 3129, 77 L.Ed.2d 1379 (1983); Griffin v. State, 414 So.2d at 1029. In Parker v. State, 476 So.2d 134, 139 (Fla. 1985), we quoted the statement in Adams v. State, 412 So.2d 850, 857 (Fla.), cert. denied, 459 U.S. 882, 103 S.Ct. 182, 74 L.Ed.2d 148 (1982), that "fear and emotional strain preceding a victim's almost instantaneous death may be considered as contributing to the heinous nature of the capital felony." Moreover, the victim's mental state may be evaluated for purposes of such determination in accordance with a common-sense inference from the circumstances. Preston v. State, 444 So.2d 939, 946 (Fla. 1984) ("victim must have felt terror and fear as these events unfolded") (emphasis added). In addition to factors based on events preceding the shooting  abduction, fear, mental anguish, and sexual abuse  the killing itself occurred in such a way as to show a wanton atrocity. Swafford fired nine bullets into the victim's body, most of them directed at the torso and extremities. See, e.g., Troedel v. State, 462 So.2d 392, 297-98 (Fla. 1984).
Aggravating circumstances must be proved beyond a reasonable doubt. Johnson v. State, 438 So.2d 774 (Fla. 1983), cert. denied, 465 U.S. 1051, 104 S.Ct. 1329, 79 L.Ed.2d 724 (1984); Williams v. State, 386 So.2d 538 (Fla. 1980). Evaluating the evidence and resolving factual conflicts in a particular case, however, are the responsibility of the trial court judge. When a trial court judge, mindful of the applicable standard of proof, finds that an aggravating circumstance has been established, the finding should not be overturned unless there is a lack of competent, substantial evidence to support it. See Stano v. State, 460 So.2d 890, 894 (Fla. 1984), cert. denied, 471 U.S. 1111, 105 S.Ct. 2347, 85 L.Ed.2d 863 (1985). There is competent, substantial evidence in the record to support the trial court's finding that this murder was especially heinous, atrocious, or cruel.
Swafford also claims that the trial court erred in finding the murder to have been "committed in a cold, calculated, and premeditated manner without any pretense of moral or legal justification." § 921.141(5)(i), Fla. Stat. (1985). The evidence showed, however, that Swafford shot the victim nine times including two shots to the head at close range and that he had to stop and reload his gun to finish carrying out the shootings. This aggravating factor can be found when the evidence shows such reloading, Phillips v. State, 476 So.2d 194, 197 (Fla. 1985), because reloading demonstrates more time for reflection and therefore "heightened premeditation." See Herring v. State, 446 So.2d 1049, 1057 (Fla.), cert. denied, 469 U.S. 989, 105 S.Ct. 396, 83 L.Ed.2d 330 (1984). The cold, calculated, premeditated murder, committed without pretense of legal or moral justification, can also be indicated by circumstances showing such facts as advance procurement of a weapon, lack of resistance or provocation, and the appearance of a killing carried out as a matter of course. See, e.g., Burr v. State, 466 So.2d 1051, 1054 (Fla. 1985), cert. denied, 474 U.S. 879, 106 S.Ct. 201, 88 L.Ed.2d 170 (1985); Eutzy v. State, 458 So.2d 755, 757 (Fla. 1984), cert. denied, 471 U.S. 1045, 105 S.Ct. 2062, 85 L.Ed.2d 336 (1985). The evidence is sufficient to sustain the finding here.
Swafford argues that the trial court incorrectly found as an aggravating circumstance that he committed the murder while engaged in, or in flight after, committing sexual battery because the sexual battery was the underlying felony supporting the first-degree felony-murder conviction. Swafford is mistaken because his first-degree murder conviction is based on premeditation *278 rather than the felony-murder rule. Premeditation can be proved by circumstantial evidence. Buford v. State, 403 So.2d 943 (Fla. 1981), cert. denied, 454 U.S. 1163, 102 S.Ct. 1037, 71 L.Ed.2d 319 (1982); Hill v. State, 133 So.2d 68 (Fla. 1961); Larry v. State, 104 So.2d 352 (Fla. 1958). A finding of intent can be based on the nature of the act and the manner of its commission. Rhodes v. State, 104 Fla. 520, 140 So. 309 (1932). Furthermore, we have held that the engaged-in-felony aggravating circumstance can be found even where the conviction rests on the felony-murder rule. E.g., Mills v. State, 476 So.2d 172, 177 (Fla. 1985), cert. denied, 475 U.S. 1031, 106 S.Ct. 1241, 89 L.Ed.2d 349 (1986).
Based on his arguments that several of the aggravating circumstances should be stricken, Swafford contends that the mitigating evidence shown should have been found to outweigh the aggravating circumstances. This argument has no persuasive force because we disagree with Swafford's arguments regarding the validity of the aggravating circumstances discussed previously. The trial court properly found all of the aggravating factors.
The trial court found that one item of information adduced by the defense constituted a nonstatutory mitigating circumstance. Based on the parties' stipulation that Swafford's father, were he able, would have testified that Swafford had attained the rank of Eagle Scout, the trial court found that Swafford had indeed been an Eagle Scout and noted "the efforts required to achieve such an honor." The court found the factor entitled to very little weight in mitigation, commenting that it did "demonstrate that the Defendant, at some point in his life, had training and supervision that should have led him to become a lawful contributing citizen." "It is within the province of the trial court to decide the weight to be given particular mitigating circumstances and whether they offset the established aggravating circumstances." Herring v. State, 446 So.2d at 1057. We find no error in the weighing process performed in this case.
Finally, Swafford presents a number of challenges to the constitutionality of the Florida capital sentencing law. This broadside attack on the sentencing law is not related, in Swafford's argument, to any action or ruling in the lower court that affected his sentencing. Moreover, Swafford did not raise or preserve these issues for appeal by motion or objection in the lower court. Eutzy v. State, 458 So.2d at 757. For these reasons we are unable to provide appellate review of the issues raised. Additionally, as Swafford concedes, the arguments made have all, in one form or another, been rejected before.
We find no error affecting the judgment or sentence. We further find the sentence of death appropriate. Therefore, the convictions and sentence are affirmed.
It is so ordered.
OVERTON, McDONALD, SHAW, GRIMES and KOGAN, JJ., concur.
BARKETT, J., dissents with an opinion, in which EHRLICH, C.J., concurs.
BARKETT, Justice, dissenting.
We previously have rejected the idea that a defendant's out-of-court admission of involvement in collateral crimes somehow is exempt from the standard of relevance contained in the Williams Rule. In Jackson v. State, 451 So.2d 458 (Fla. 1984), we ruled that a defendant's out-of-court admission that he was "a thoroughbred killer" and that he brandished a gun while making this statement was irrelevant and inadmissible in his trial for an unrelated murder.
The testimony showed Jackson may have committed an assault on [a third party], but that crime was irrelevant to the case sub judice. Likewise the "thoroughbred killer" statement may have suggested Jackson had killed in the past, but the boast neither proved that fact, nor was that fact relevant to the case sub judice. The testimony is precisely the kind forbidden by the Williams rule and section 90.404(2).
Id. at 461. Moreover, Jackson cited with approval the following statement from *279 Paul v. State, 340 So.2d 1249, 1250 (Fla. 3d DCA 1976), cert. denied, 348 So.2d 953 (Fla. 1977):
There is no doubt that this admission [to prior unrelated crimes] would go far to convince men of ordinary intelligence that the defendant was probably guilty of the crime charged. But, the criminal law departs from the standard of the ordinary in that it requires proof of a particular crime. Where evidence has no relevancy except as to the character and propensity of the defendant to commit the crime charged, it must be excluded [citing Williams].

(Emphasis added.) In Paul, the court gave this rationale in ruling irrelevant and inadmissible a burglary defendant's confession that he had committed seventeen other unsolved burglaries.
I conclude that Swafford's alleged statement to Johnson, "you just get used to it," is no more relevant to the issues at his trial than were the admissions in Jackson and Paul. This alleged admission certainly was more equivocal than the defendant's boast in Jackson that he was a "thorough-bred killer." As in Jackson, it neither proved that Swafford had killed in the past nor was it relevant to any issue at trial, except to show criminal propensity and character. And Swafford's single, vague statement to Johnson pales in comparison to the defendant's confession in Paul that he had committed seventeen other burglaries.
Moreover, the probative value of this collateral-crimes evidence was, at best, slight. The potential prejudice it posed to this defendant's case, however, was substantial. The only relevance of this testimony was to establish the criminal propensity and character of Swafford. It therefore falls within the rule of exclusion contained in the final clause of section 90.404(2)(a), Florida Statutes, and should never have been heard by the jury. See Straight v. State, 397 So.2d 903, 908 (Fla.), cert. denied, 454 U.S. 1022, 102 S.Ct. 556, 70 L.Ed.2d 418 (1981); McCrae v. State, 395 So.2d 1145, 1152 (Fla. 1980), cert. denied, 454 U.S. 1041, 102 S.Ct. 583, 70 L.Ed.2d 486 (1981); Smith v. State, 365 So.2d 704, 706 (Fla. 1978), cert. denied, 444 U.S. 885, 100 S.Ct. 177, 62 L.Ed.2d 115 (1979).
Accordingly, I would reverse appellant's conviction and order a new trial.
EHRLICH, C.J., concurs.
NOTES
[1] § 90.404(2)(a), Fla. Stat. (1985), provides as follows:

(2) OTHER CRIMES, WRONGS, OR ACTS. 
(a) Similar fact evidence of other crimes, wrongs, or acts is admissible when relevant to prove a material fact in issue, such as proof of motive, opportunity, intent, preparation, plan, knowledge, identity, or absence of mistake or accident, but it is inadmissible when the evidence is relevant solely to prove bad character or propensity.
[2] Numerous decisions of this Court indicate that if evidence is relevant it will be admitted and its probative value left to the trier of fact. E.g., Brown v. State, 473 So.2d 1260 (Fla.) (while admissibility of a statement was not challenged on appeal, the Court's discussion of it in resolving an issue of fact indicates its relevance and shows that such an admission has probative value even without specific referential facts), cert. denied, 474 U.S. 1038, 106 S.Ct. 607, 88 L.Ed.2d 585 (1985); Jones v. State, 440 So.2d 570, 577 (Fla. 1983) (court found evidence to the effect that, prior to the time of the offense charged, the defendant had said that he was going to "kill a pig" admissible under an exception to the hearsay rule and relevant to the question of whether the defendant was guilty of the crime charged); Johnson v. State, 438 So.2d 774 (Fla. 1983) (although the statement that Johnson would not mind shooting people to obtain money was not an admission of specific incriminating facts, it was capable of supporting an inference of guilt and was therefore properly considered), cert. denied, 465 U.S. 1051, 104 S.Ct. 1329, 79 L.Ed.2d 724 (1984); Rose v. State, 425 So.2d 521, 522 (Fla. 1982) (statement that defendant "did not know what he was capable of doing" was relevant evidence tending to show guilt when considered in light of other evidence concerning the defendant's motive), cert. denied, 461 U.S. 909, 103 S.Ct. 1883, 76 L.Ed.2d 812 (1983); Antone v. State, 382 So.2d 1205 (Fla.) (the relevance of a statement made after a crime lay in its support of an inference concerning the defendant's knowledge of certain criminal activity), cert. denied, 449 U.S. 913, 101 S.Ct. 287, 66 L.Ed.2d 141 (1980).
[3] The hearsay exception for declarations against interest made by nonparties was discussed in Baker v. State, 336 So.2d 364 (Fla. 1976). The admissibility of such statements is also recognized in the federal courts, although the theory is somewhat different: under Federal Rule of Evidence 801(d)(2), admissions are defined as not coming within the hearsay rule, rather than as exceptions to it. United States v. Clemons, 676 F.2d 122 (5th Cir.1982); United States v. Roe, 670 F.2d 956 (11th Cir.), cert. denied, 459 U.S. 856, 103 S.Ct. 126, 74 L.Ed.2d 109 (1982); United States v. Archbold-Newball, 554 F.2d 665 (5th Cir.), cert. denied, 434 U.S. 1000, 98 S.Ct. 644, 54 L.Ed.2d 496 (1977).
[4] In some cases this hearsay exception has been referred to, mistakenly, as being grounded in the fact that the party's statement was an "admission against interest." E.g., Parrish v. State, 90 Fla. at 32, 105 So. at 133; Daniels v. State, 57 Fla. at 4, 48 So.2d at 748; Darty v. State, 161 So.2d at 870. More recent authorities make clear that a statement of a party is admissible as an admission and "need not have been consciously against the interest of its maker at the time it occurred." Hunt v. Seaboard Coast Line R.R., 327 So.2d 193, 196 (Fla. 1976).
[5] In a number of cases this Court has held admissible statements of a defendant made either before or after the time of the crime charged. In some of these cases, the testimony about the statements also showed the commission of separate crimes or wrongs or cast the defendant's character in a bad light. In Waterhouse v. State, 429 So.2d 301 (Fla.), cert. denied, 464 U.S. 977, 104 S.Ct. 415, 78 L.Ed.2d 352 (1983), the Court found the testimony about the incident relevant and admissible "because it included, and explained the context of, an incriminating admission." Id. at 306. Similarly, in Phillips v. State, 476 So.2d 194, 196 (Fla. 1985), a statement of the defendant, challenged as being irrelevant and prejudicial because it was damaging to his character, was found to be "relevant to discredit appellant's alibi and to explain the context of an incriminating admission."
[6] Swafford relies on cases in which the support for the factor was too speculative because other possible motives existed. These cases are inapplicable. Even without direct evidence of the offender's thought processes, the arrest avoidance factor can be supported by circumstantial evidence through inference from the facts shown. See, e.g., Harich v. State, 437 So.2d 1082, 1086 (Fla. 1983), cert. denied, 465 U.S. 1051, 104 S.Ct. 1329, 79 L.Ed.2d 724 (1984).