GLICKSTEIN, Judge,
concurring specially in part and dissenting in part.
I concur that the case warrants reversal and remand because of the reasons given by the majority. However, I would exclude all of the appellant’s statements at retrial.
The victim, Hooshang Adib, went to the Flea Market on Sunrise Boulevard in Fort Lauderdale to pick up tools for his business. At about noon, he began to drive home when one of his car’s tires went flat; so he pulled over to the side of the road to replace it.
As Adib went to put the flat tire in the trunk of his car, a black male approached him, with a gun in hand, and demanded Adib’s wallet. In response to his assailant’s repeated demands, Adib stated he had no wallet and no money. Adib slammed his trunk lid shut and attempted to get in his car, a silver Mercedes. He testified that the assailant got into the car to look for the ignition key, then came back out. Adib walked up to the front of the car as the assailant came out of the car. A van then appeared and the assailant began to walk away. Once the assailant was ten to fifteen feet from the car, he turned, aimed his gun, shot Adib in the forehead and fled.
Adib, bleeding profusely, yet in disbelief that someone could shoot him in broad daylight, drove himself to a corner gas station. Police and an ambulance arrived shortly thereafter, and he was taken to Plantation General Hospital, where his wound, fortunately only a laceration, was treated.
A few days later, Adib identified appellant from photographs; but to be completely sure, he viewed a live lineup on March 5, 1985, and immediately recognized appellant as the person who shot him. He was positive of his identification.
That should have been enough to convict the defendant; but the prosecution offered more evidence, which led to harmful error. Detective Rhia questioned appellant following his arrest and gave him a rights advisory. He then told appellant that he had been identified in a photo lineup by the victim and that he was seen running from the area by someone who knew him. Appellant replied he was never there and did not commit the criminal acts. Detective Rhia then posed a hypothetical question to the appellant. He asked appellant — what if the victim’s car door had been opened by the person who shot him (the victim) and the fingerprints on the car door had been identified as the appellant’s? No fingerprints had been found. Appellant replied that he had been in the area selling drugs and had tried to break into two vehicles, a blue truck and a silver Mercedes Benz. Detective Rhia had not described the victim’s car to the appellant. The majority will allow everything the appellant said except for the drug dealing at the new trial. I believe this to be prosecutorial overkill.
The defense introduced the testimony of a witness named Michael Twitty who was in a home located in the vicinity of the shooting incident. Twitty testified that he selected appellant’s photo from a photographic lineup. He further testified that his selection of appellant’s photograph was done against his will and was the result of being harassed by Detective Rhia.
Appellant contends that the testimony regarding appellant’s admission of prior unrelated criminal activity (selling drugs and attempting to break into cars) had no probative value with regard to the crimes for which appellant was being tried. According to appellant, the only purpose of admitting said testimony was to show his propensity to commit the crimes with which he was charged, and he points out that there were no similarities between the circumstances of the other crimes and the offenses for which he was being tried so as to make the admission of the evidence proper.
The state counters the appellant’s argument by asserting that the evidence of appellant’s commission of other crimes was relevant to the issue of identity. Subject to the above limitation, the majority agrees with the state.
*558 The Williams Rule was codified in section 90.404(2)(a) Florida Statutes (Supp. 1976), which provided then as it does now:
Similar fact evidence of other crimes, wrongs, or acts is admissible when relevant to prove a material fact in issue, such as proof of motive, opportunity, intent, preparation, plan, knowledge, identity, or absence of mistake or accident, but it is inadmissible when the evidence is relevant solely to prove bad character or propensity.
(emphasis added). When the evidence is offered to prove identity, as in the instant case, uniqueness and similarity between the crimes are important considerations. C. Ehrhardt, Florida Evidence § 404.9 (2d Ed.1984). As stated by Ehrhardt:
The most common basis of proving the identity of the person who committed the crime in question is from evidence that collateral crimes were committed by the use of a distinctive modus operandi which was the same as that used in the crime in question. Proof that the defendant committed the other crimes provides a basis for an inference that the defendant committed the crime in question. The fact that the defendant is identified as having committed a prior crime does not, by itself, mean the evidence is relevant. The probative value comes from the fact that the collateral crimes were committed with a unique modus operan-di which was the same as that used in the crime in question; therefore it may be inferred that the same person committed both crimes. When that evidence is coupled with an identification of the defendant as the person who committed the prior crime, the evidence is relevant. Evidence that the defendant has committed prior crimes, without evidence of a similar modus operandi, does not raise the same inference. Only when the court can find that modus operandi is so unusual so that it is reasonable to conclude that the same person committed both crimes is the evidence of the prior crime admissible to prove identity.
Id. at § 404.10 (emphasis added) (footnotes omitted).
In Peek v. State, 488 So.2d 52 (Fla.1986), the Florida Supreme Court vacated a defendant’s conviction for first-degree murder, sexual battery, and unauthorized use of a motor vehicle on the grounds that the trial court improperly held that evidence of the defendant’s admission and conviction of a subsequent rape was admissible because it was similar in circumstances to the charged crime. In vacating the conviction, the Court noted that the dissimilarities between the two crimes greatly outnumbered the similarities and that the crimes’ common points were not so unusual “as to establish a ‘sufficiently unique pattern of criminal activity to justify admission of [the collateral crime] evidence.’ ” Id. at 55 (citation omitted).
As pointed out by appellant, the circumstances of the collateral crimes introduced into evidence in the instant case were not developed to any degree such as to show their similarity to the charged offenses. Although it appears that appellant admitted having approached two vehicles, one of which was described as a silver Mercedes, and having attempted to break into them, there was nothing so unusual about the earlier crimes to point to the appellant’s commission of the instant offenses. In the burglary of a conveyance offense charged in the instant case, appellant approached the vehicle with a gun and demanded money from the vehicle’s owner before getting into the vehicle.
As to the drug dealing offense, it is clearly distinguishable from the crimes for which appellant was being tried. As for the silver Mercedes, Fort Lauderdale at noon is not Yeehaw Junction at 2:00 a.m. The Adib silver Mercedes was hardly the only one around.
In Straight v. State, 397 So.2d 903, 908 (Fla.), cert. denied, 454 U.S. 1022, 102 S.Ct. 556, 70 L.Ed.2d 418 (1981), the Florida Supreme Court held that the admission of improper collateral crime evidence is “presumed harmful error because of the danger that a jury will take the bad character or propensity to crime thus demonstrated as evidence of guilt of the crime charged.” In State v. DiGuilio, 491 So.2d 1129 (Fla. *559 1986), the Florida Supreme Court stated that “if the appellate court cannot say beyond a reasonable doubt that the error did not affect the verdict, the error is by definition harmful.”
Professor Ehrhardt’s 1988 supplement cites Garrette v. State, 501 So.2d 1376 (Fla. 1st DCA 1987), for the principle that “admission of collateral crime evidence cannot ‘be deemed harmless in a case where the only evidence identifying the defendant as the perpetrator of the crime is the testimony of a single eyewitness Ehrhardt § 404.9 (Supp.1988).