494 So.2d 203 (1986)
Patrick James THOMPSON, Appellant,
v.
STATE of Florida, Appellee.
No. 66224.
Supreme Court of Florida.
September 18, 1986.
Max Rudmann of Martin Zevin, P.A., Boca Raton, and Robert P. Kundinger, Pompano Beach, for appellant.
Jim Smith, Atty. Gen., and Robert S. Jaegers, Asst. Atty. Gen., West Palm Beach, for appellee.
PER CURIAM.
Patrick James Thompson appeals his conviction for first-degree murder and his sentence of death after a jury recommendation of life imprisonment. We have jurisdiction. Art. V, § 3(b)(1), Fla. Const. We reverse his conviction and death sentence and remand for a new trial because of improperly admitted evidence concerning a collateral crime committed by Thompson.
The record reflects that on the morning of January 21, 1983, the body of a 29-year-old woman was discovered inside a Panasonic stereo box in a dumpster behind the Stadium Pub in Fort Lauderdale. The victim had been strangled to death, and her body was extensively bruised. Lacerations on her hands indicated that she had resisted her attacker. She was clothed and wearing jewelry; however, her jeans were partially unzipped. A vaginal swab revealed the presence of sperm, but the victim's vagina showed no signs of trauma.
The victim's boyfriend testified that he initially met her in a lounge approximately one month before the murder, that he and the victim had sex on the night of January 19, and that he last saw the victim at approximately 6:00 p.m. on January 20. At that time the victim informed him that she was going to her uncle's house to pick up some personal items and would return later that evening. She left in his Cadillac which was found the next day stuck in the sand near the St. Helen's Church parking lot. The boyfriend also testified that the victim had been expecting to see her former boyfriend, and that she was planning to tell her former boyfriend that she no longer wanted to see him. No evidence was introduced to show that Thompson was the former boyfriend or had ever known the victim.
*204 Thompson was arrested for the victim's murder approximately one year after the body was discovered. The arresting detective testified that the warrant was issued when he found that the appellant's fingerprint matched a print taken from the Panasonic box containing the victim's body and that appellant lived two blocks from St. Helen's Church. At the time of his arrest, Thompson told the detective that he had no knowledge of the murder, that he had thrown two Panasonic speaker boxes into the dumpster at his apartment complex in late December or early January, and that he had not been to the Stadium Pub.
Conflicting testimony was introduced concerning Thompson's presence at the scene. One witness testified that he helped a man struggling to put a box into the dumpster, but that Thompson was positively not that man. Another witness claimed to have seen Thompson and the victim standing near the Cadillac stuck in the sand.
Over appellant's objection, the state introduced evidence of a collateral crime committed by appellant two years prior to this offense. The victim of the collateral crime testified that Thompson had abducted her at approximately 11:00 p.m., by accosting her, threatening to shoot her, and driving with her to the St. Helen's Church parking lot. Because she feared Thompson would kill her, she complied when he asked her to remove her clothes, perform oral sex on him, and have sexual intercourse. According to the victim, Thompson told her that his name was Richie, that he had raped her because a girl had jilted him, and that he was sorry he had raped her. He took her back to her car and kissed her good night. The victim testified that she never saw a gun, and that appellant did not use physical force on her. She considered not reporting the incident, but, after discussing it with her roommate, the victim called the police. Thompson was subsequently arrested and convicted of sexual battery and kidnapping.
As part of the collateral crime evidence, the state also introduced testimony indicating that appellant was having marital problems during the period in which the woman was raped, and that, in January, 1983, he was having problems with his girlfriend.
After considering this collateral crime testimony along with the other evidence, the jury found Thompson guilty of first-degree murder and recommended a life sentence. The trial judge, however, imposed the death penalty.
On appeal, Thompson raises three issues concerning his conviction and sentence. We find dispositive his contention that the admission in evidence of his earlier criminal offense denied his constitutional right to a fair trial because it was not sufficiently similar in accordance with the standards set forth by this Court in Williams v. State, 110 So.2d 654 (Fla.), cert. denied, 361 U.S. 847, 80 S.Ct. 102, 4 L.Ed.2d 86 (1959); Drake v. State, 400 So.2d 1217 (Fla. 1981); and Peek v. State, 488 So.2d 52 (Fla. 1986).
The trial court held that evidence of Thompson's earlier conviction for sexual battery and kidnapping was similar in circumstances to the charged crime and, therefore, that this collateral crime evidence was admissible pursuant to our decision in Williams and the Florida Evidence Code, section 90.404(2)(a), Florida Statutes (1983). We disagree. We find that the details between the two crimes are not sufficiently similar to be relevant and that our recent decisions in Peek and Drake control.
To be admissible under the Williams rule, the identifiable points of similarity must pervade the compared factual situations, and, if sufficient factual similarity exists, the facts must have some special character or be so unusual as to point to the defendant. In the instant case, the primary similarities between the two crimes were (1) both victims were women of approximately the same age and build; (2) both crimes occurred near St. Helen's Church parking lot; and (3) Thompson was having domestic difficulties on both occasions. On the other hand, there are substantial dissimilarities. In the instant offense, the victim was badly beaten and *205 there was no substantial evidence of sexual abuse. The collateral crime involved a sexual battery without any bodily harm or beating to the victim, and, in fact, the defendant established enough rapport with his victim that she seriously considered not reporting the sexual assault. We find as few similarities and as many dissimilarities in this case as we did in Drake and Peek, and conclude that admission of the collateral crime evidence was prejudicial error, particularly in view of the conflicting evidence presented to the jury.
Although the collateral crime evidence is inadmissible, we find there is sufficient evidence to present this matter to a jury without the prejudicial testimony. Accordingly, we vacate appellant's conviction and sentence and remand the cause for a new trial.
It is so ordered.
OVERTON, EHRLICH, SHAW and BARKETT, JJ., concur.
McDONALD, C.J., and ADKINS, J., dissent.
BOYD, J., dissents with an opinion.
BOYD, Justice, dissenting.
The weakness in the state's case against appellant is clearly stated in the majority opinion.
Appellant's fingerprint on the box could have been placed there before he discarded the box in which the victim's body was found, or he could have touched the box inadvertently while throwing trash into the dumpster.
Testimony of a witness who helped another man place the burial box into the dumpster should have been most persuasive against conviction of appellant.
Testimony of a witness who said she saw appellant with the victim talking beside her car showed there were no signs of violence. Appellant lived in the area and could have been there without criminal intent.
Thompson smoked Marlboro cigarettes. Finding an abandoned Marlboro cigarette near the murder scene did not show he killed the victim.
The hair found in the victim's vaginal area was the same type as appellant's hair, but many other people have the same type of hair.
I fully recognize that juries are charged with the duty of finding guilt or innocence, and verdicts based on competent and sufficient evidence should not be disturbed by trial or appellate courts. In this case the evidence was not competent and sufficient for conviction.
The principal argument made against capital punishment is the possible execution of innocent people. To prevent such miscarriage of justice this Court must review each trial court record before affirming death penalties.
Since there is not sufficient competent evidence here to meet the requirements of law, I would reverse the conviction. No new trial should be permitted.