861 So.2d 1195 (2003)
STATE of Florida, Petitioner,
v.
Alan Ira RICHMAN, M.D., Respondent.
No. 2D02-4697.
District Court of Appeal of Florida, Second District.
December 10, 2003.
*1196 Charles J. Crist, Jr., Attorney General, Tallahassee, and John M. Klawikofsky, Assistant Attorney General, Tampa, for Petitioner.
Wilbur C. Smith, III, of Wilbur Smith Law Firm, Fort Myers, for Respondent.
PER CURIAM.
On this timely petition for writ of common law certiorari, the State challenges an amended, nonfinal pretrial order determining certain collateral crime evidence to be inadmissible. Because we conclude that the exclusion of the evidence constitutes a departure from the essential requirements of law and will irreparably harm the State's presentation of its case, we grant the State's petition.
The respondent, Alan Ira Richman, M.D., a rheumatologist, was charged by information with one count of sexual battery upon C.G., while she was physically helpless to resist; one count of lewd or lascivious molestation of A.G., an elderly or disabled person; and two counts of misdemeanor battery upon D.B. All three victims were patients of Dr. Richman, and each of the incidents giving rise to the charges were alleged to have occurred on a first or second visit to Dr. Richman's Lee County office during normal business hours. In these instances, Dr. Richman was purportedly administering treatment for joint pain relating to fibromyalgia, as was the case with victims C.G. and A.G., or for a cluster migraine headache possibly relating to lupus, as was the case with victim D.B.
On July 5, 2001, citing sections 90.402 and 90.404(2)(a), Florida Statutes (2000), the State filed notice of its intention to introduce collateral crime evidence at trial "for the purpose of showing proof of motive, opportunity, intent, preparation, plan, knowledge, absence of mistake or accident, lack of consent, corroborating victim[s'] testimony, modus operandi, and rebutting defenses." Thereafter, hearings were held at which the State proffered the testimony of seven former female patients of Dr. Richman, each of whom claimed to have been sexually molested by him while receiving treatment during what was supposed to have been a routine office visit.
The trial court entered a written order finding that the collateral crime/similar fact testimony from three of the seven proposed State witnesses would be admissible at trial. The trial court specifically found that, pursuant to Heuring v. State, 513 So.2d 122, 124 (Fla.1987), the proffered testimony of State witnesses J.H., G.J., and I.L. demonstrated that their experiences with Dr. Richman were strikingly similar to those of the victims of the charged offenses. The trial court thus concluded that the testimony of those three witnesses was "relevant and ... admissible... for the purpose of establishing a modus operandi or a common plan, scheme[,] or design ... in committing the crime[s]" at issue.
Subsequently, the trial court, sua sponte, entered an amended written order declaring the State's similar fact evidence to be inadmissible in its entirety. The trial court indicated that, in light of this court's recent decision in Kulling v. State, 827 So.2d 311 (Fla. 2d DCA 2002), it had *1197 reconsidered its former evidentiary ruling. In doing so, it determined that Heuring was not controlling in this instance, because it "is applicable only to `cases involving sexual abuse by a person in familial authority.'" The trial court further concluded that, under Kulling, the characteristics of the acts described by the State's collateral crime witnesses were not "so [similar or] unique as to constitute fingerprint evidence." The trial court in fact found that the testimony of the State's witnesses merely demonstrated "limited points of factual similarity."
The State now properly petitions this court for certiorari relief. See State v. Pettis, 520 So.2d 250 (Fla.1988) (holding that certiorari petition is appropriate to review nonfinal pretrial evidentiary order in criminal case). The State is entitled to such relief if the trial court's order "constitutes a departure from the essential requirements of law from which the State may suffer irreparable injury." State v. Johnston, 743 So.2d 22, 24 (Fla. 2d DCA 1999) (citing Haines City Cmty. Dev. v. Heggs, 658 So.2d 523, 525 (Fla.1995)); see also State v. Gates, 826 So.2d 1064, 1066 (Fla. 2d DCA 2002) (stating that upon certiorari review of nonfinal order "State must prove that the trial court's ruling violated a clearly established legal principle which would result in material injustice").
In this instance, the State contends that it is not required to meet a high standard of admissibility, because the primary purpose of the collateral crime evidence at issue is to establish Dr. Richman's modus operandinot to prove his identity, which the State suggests is a circumstance where collateral crime evidence must reach "fingerprint" level similarity to the charged offense. The State further contends that, even if fingerprint similarity is required in this context, the testimony of witnesses J.H., G.J., and I.L. indeed meets that standard. In either event, the State argues that neither Heuring nor Kulling applies here. It posits that Heuring allows for a lower standard of admissibility and controls only when sexual abuse occurs in a familial context. It claims that Kulling, which mandates the higher standard of fingerprint similarity, controls only when collateral crime evidence is offered for the sole purpose of corroborating the testimony of a sexual abuse victim.
We agree that Heuring does not apply in this instance.[1] We conclude, however, that the similar fact evidence at issue meets the fingerprint standard of admissibility enunciated in Kulling.
In Gore v. State, 599 So.2d 978 (Fla. 1992), a death penalty case, collateral crime evidence was admitted in a prosecution for first-degree murder, kidnaping, and robbery. The purpose of the collateral crime evidence was to establish the defendant's identity as the perpetrator of those crimes and his specific intent to commit them. The defendant argued that the collateral crime was too dissimilar to have been properly admitted into evidence. The Florida Supreme Court stated, however, that it "has never required the collateral crime[s] to be absolutely identical to the crime[s] charged." Id. at 984. It explained that, instead, it is the "pervasive *1198 similarities" or the "significant common features" of the current and collateral offenses that are determinative. Id. at 983. In upholding the admissibility of the subject collateral crime evidence, the Gore court acknowledged differences between the current and collateral incidents but concluded that "the similarities [were] pervasive, and the dissimilarities insubstantial." Id. at 984. It observed that the dissimilarities seemed to result only from differences in the defendant's opportunities rather than his modus operandi. Id. (citing Chandler v. State, 442 So.2d 171, 173 (Fla.1983)); see also Schwab v. State, 636 So.2d 3, 7 (Fla.1994); Cadet v. State, 809 So.2d 43, 47 (Fla. 4th DCA 2002). The Gore court ultimately stated that, in the past, it "has upheld the use of evidence of a collateral crime where the common points, when considered in conjunction with each other, establish a pattern of criminal activity which is sufficiently unique." 599 So.2d at 984 (citing Chandler, 442 So.2d at 173); see also State v. Ackers, 599 So.2d 222, 224 (Fla. 5th DCA 1992) (holding that, despite some differences between the charged offense and the collateral crime, similarities between the two were striking enough to establish a unique crime pattern).
In the instant case, the pervasive material similarities between the circumstances and conduct giving rise to the instant charges and those described by collateral crime witnesses J.H., G.J., and I.L. are uncanny. The current and collateral crime victims were, of course, female patients of Dr. Richman. All were referred to him for the same or similar maladies or combinations of illnesses such as fibromyalgia, arthritis, lupus, and/or migraines. All were seeking treatment for joint pain, with the exception of victim D.B., who complained of cluster headaches. All were on either their first or second afternoon office visit at the same Lee County location. In each instance, Dr. Richman treated the victim in his examining room, without a nurse present. Each incident arose under the guise of examination and treatment, where Dr. Richman would at some point begin examining and otherwise touching a part of the victim's anatomy that was completely unrelated to her medical complaint. Thus, in each instance, the visit would begin normally and ultimately end in some form of sexual molestation. While the nature and degree of sexual abuse varied from victim to victim, any dissimilarities seemed to result from the level of incapacity of a victim to resist or the sheer aggressiveness of a victim in rejecting Dr. Richman.
Because the similarities between the charged offenses and the collateral crimes here are striking enough to establish a unique crime pattern and are otherwise sufficient to meet the fingerprint standard for admissibility, the trial court departed from the essential requirements of the law in refusing to allow such evidence. The State will be irreparably harmed in the presentation of its case, see State v. Cohens, 701 So.2d 362, 364 (Fla. 2d DCA 1997), and will be without a legal remedy if Dr. Richman is acquitted. See State v. M.D., 706 So.2d 41, 42 (Fla. 2d DCA 1998). Therefore, we grant the petition for certiorari and quash the trial court's amended order excluding the collateral crime evidence at issue.
Petition granted.
SALCINES, KELLY, and CANADY, JJ., concur.
SALCINES, J., concurs with opinion.
CANADY, J., concurs with opinion in which KELLY, J., concurs.
*1199 SALCINES, Judge, concurring.
Our conclusion is unanimous. We agree that the collateral similar act or fact evidence is admissible. In the case before us, the State proffered the testimony of seven collateral witnesses (who were not the victims in the subject information which alleged three other victims). The judge initially ruled that the testimony of three of the seven collateral witnesses was admissible under the Williams[2] rule, but seven months later, sua sponte, changed his ruling in a subsequent order which is now before us. I agree with the State's argument that neither Kulling nor Heuring should apply and that our decisions in Morman and in McLean v. State, 854 So.2d 796 (Fla. 2d DCA 2003), are more consonant with the legal history of the Williams rule and its statutory codification. We are aware of the fact that the trial judge did not have the benefit of the McLean opinion when he entered his sua sponte order.
The use, at trial, of certain similar act or fact evidence has withstood the test of time at all levels of federal and state jurisprudence, procedurally and statutorily. "Relevance" is the key factor in determining whether such evidence is admissible at trial and I would not whittle away that standard with a "strict," "relaxed," "liberal," or "conservative" spin.
If collateral evidence is relevant, the trial judge must use the scales of justice. On one side of the scale, the judge must weigh "the probative value," such as the significant, unique, and common features, or similarities that establish a pattern. On the other side of the scale, the judge must weigh "the prejudicial effect," considering such factors as the lack of similarities or significant features to determine whether the evidence is offered solely to show the accused is of bad character or propensities.
In the present case, the trial judge had to consider the similarities and chronology of the alleged sexual acts, including the evidence that the alleged acts were committed in the same location, at approximately the same time of day when no nurse was present, and against victims of the same gender, as well as the evidence that the alleged acts were of similar duration.
I could not say the trial judge departed from the essential requirements of law when he first ruled that the collateral evidence was admissible. But then, presumably upon rereading the flurry of cases which make a distinction when the identity of the accused is not an issue and others which address family and nonfamilial relationships (which was not the case here), the judge reacted sua sponte and changed his ruling. The misconception, in my view, was created by the numerous recent opinions on Williams rule issues that have led to sufficient disagreement among thoughtful and cautious trial judges as to the method by which the decision to admit or exclude the collateral evidence is to be reached. The shortest distance between two destinations is a straight linebut that is not the only way to travel between point "A" and point "B." The alternative routes that one may consider in reaching a destination have become confusing to trial judges through dicta and examples used in different appellate cases. That confusion, I believe, led the trial judge in the case before us to exclude the Williams rule evidence out of an abundance of caution. The State correctly sought appellate redress and this panel fully agrees that the *1200 evidence is relevant and admissible and should be allowed at trial with the standard cautionary jury instructions as stated in our recent opinion in McLean.
We unanimously agree that the sua sponte order of the trial judge now before us was a departure from the essential requirements of law.
CANADY, Judge, concurring.
I fully concur with the conclusion and the analysis set forth in the majority opinion. I write separately for the sole purpose of expressing my view that fingerprint-type similarity should not be required for the admission of similar fact evidence concerning modus operandi that is relevant to corroborate a victim's testimony that an offense occurred and not to establish the identity of the defendant as the perpetrator. See Shapiro v. State, 696 So.2d 1321, 1324 (Fla. 4th DCA 1997) (holding that similar fact evidence regarding prior act of sexual misconduct by defendant was properly admitted to show the defendant's "common scheme, plan, or design to sexually exploit his patients," and that such evidence is relevant "even if it is not uniquely similar").
I agree that in the case under review the trial court had no basis for concluding that the similar acts evidence which the State sought to introduce did not meet the fingerprint-type similarity test articulated by this court in Kulling. See also Farrill v. State, 759 So.2d 696, 698 (Fla. 2d DCA 2000) (holding, in case where identity was not at issue, that evidence of collateral offenses of sexual batteries on children outside the intrafamilial or custodial context was inadmissible because the collateral acts were not "strikingly" similar to the charged crimes and did "not possess unique characteristics to distinguish them from other similar sexual batteries on children"). But I believe that the strict test set forth in Kulling is not appropriately applied in a casesuch as the case under reviewwhere the identity of the defendant is not at issue. The rationale for requiring a heightened level of similarity in cases where the defendant is identified as the perpetrator based on collateral crimes involving the same modus operandi used in the charged offense is simply not applicable where the similar acts evidence is offered to corroborate the victim's testimony that an offense occurred and to rebut the defendant's contention that the victim's testimony is fabricated.
The admissibility of similar fact evidence is determined by the interaction of the rules set forth in sections 90.402, 90.403, and 90.404(2)(a), Florida Statutes (2000). Under these statutory provisions, the starting point for analysis is the rule that "[a]ll relevant evidence is admissible, except as provided by law." § 90.402. Once it is determined that similar fact evidence is relevant to "prove a material fact in issue," the evidence may be excluded only if it "is relevant solely to prove bad character or propensity," § 90.404(2)(a), or if its "probative value is substantially outweighed by the danger of unfair prejudice, confusion of issues, misleading the jury, or needless presentation of cumulative evidence," § 90.403.
A requirement that similar fact evidence generally meet a fingerprint-type similarity standard is neither required by nor consistent with these governing statutory provisions. Where offered to establish something other than the identity of the defendant, evidence of a collateral crime that lacks unique distinguishing characteristics may nonetheless be highly relevant to prove a material fact other than the defendant's bad character or propensity. (Although similar fact evidence mayindeed almost inevitably willpoint to a conclusion regarding the defendant's propensity *1201 or bad character, that is not sufficient to exclude the evidence. The rule of exclusion applies only to similar fact evidence that is used solely to prove bad character or propensity.) Moreover, there is no reason to believe that the danger of unfair prejudice to the defendant from the admission of such evidence will necessarily substantially outweigh its probative value.
The probative value of modus operandi evidence used to establish identity depends on a high degree of similarity between the charged crime and the collateral crime. Such evidence is admissible because it supports an inference that the charged crime is so much like the collateral crime and the collateral crime is itself so unusual or unique that it is unlikely that the charged crime could have been committed by anyone other than the person who committed the collateral crime. Such a high degree of similarity between the charged crime and the collateral crime is not necessary to give significant probative force to collateral crime evidence offered to support the inference that it is unlikely that the victim's accusation against the defendant is fabricated if the defendant has committed a similaralbeit not uniquely similar crime in the past. That inference is based on the manifest improbability that a defendant who has previously committed a particular type of crime using a particular modus operandi will thereafter fortuitously be falsely accused of committing a similar type of crime using a similar modus operandi.
"[T]he determination of whether evidence properly may be admitted as Williams [v. State, 110 So.2d 654 (Fla. 1959)] rule evidence is a highly individualized, factually intensive inquiry." Robertson v. State, 829 So.2d 901, 908 (Fla.2002) (enumerating "multiple determinations" that trial court must make in evaluating the admissibility of Williams rule evidence). Ultimately, the degree of similarity required for the admission of similar fact evidence should depend on the particular purpose for which that evidence is offered and the total factual context. The context-sensitive inquiry required for a proper determination concerning the admissibility of Williams rule evidence should not be supplanted by the unreflective application of the requirement for fingerprint-like similarity.
In Heuring, the supreme court stated by way of obiter dictumthe broad principle that "similar fact evidence must meet a strict standard of relevance," namely that "[t]he charged and collateral offenses must be not only strikingly similar, but they must also share some unique characteristics or combination of characteristics which sets them apart from other offenses." 513 So.2d at 124. The Heuring court went on to indicate that such a strict standard is not applicable to "[c]ases involving sexual battery committed within the familial context"like the case under review in Heuringwhere "identity is not an issue," the "victim is typically the sole eye witness," and the "[c]redibility [of the victim] becomes the focal issue." Id. The court further observed that in such cases "the better approach treats similar fact evidence as simply relevant to corroborate the victim's testimony[] and recognizes that in such cases the evidence's probative value outweighs its prejudicial effect." Id. at 124-25. The court, however, did not articulate a precise alternative standard applicable in the context of intrafamilial sexual battery cases for determining the sufficiency of similarity between the collateral acts and the charged crime.
It is noteworthy that in support of the general strict standard of relevance the Heuring court cited two Florida cases, Thompson v. State, 494 So.2d 203 (Fla. 1986), and Drake v. State, 400 So.2d 1217 *1202 (Fla.1981), and a California case, People v. Haston, 69 Cal.2d 233, 70 Cal.Rptr. 419, 444 P.2d 91 (1968). All three cases dealt with circumstances where similar fact evidence was introduced to establish the identity of the perpetrator by showing modus operandi. See Thompson, 494 So.2d at 204 (holding that collateral crime evidence used to identify defendant as perpetrator was improperly admitted where the facts did not "have some special character" and were not "so unusual as to point to the defendant"); Drake, 400 So.2d at 1219 (stating that the "mode of operating theory of proving identity is based on both the similarity of and the unusual nature of the factual situations being compared"); Haston, 70 Cal.Rptr. 419, 444 P.2d at 98 (stating that when "a primary issue of fact is whether or not defendant rather than some other person was the perpetrator of the crime charged, evidence of other crimes is ordinarily admissible if it discloses a distinctive [m]odus operandi") (citations omitted).
The fact pattern in Heuring itself was, of course, distinct from the fact pattern in Thompson, Drake, and Haston. In Heuring, identity was not at issue; in Thompson, Drake, and Haston, identity was the central issue. The reach of the strict standard for the admission of similar acts evidence pronounced in Heuring extends beyond the scope of the standard articulated in each of the cases on which Heuring relies. See also State v. Savino, 567 So.2d 892, 894 (Fla.1990) (stating, in case where defendant sought to identify third party as perpetrator by introduction of evidence of similar acts by third party, that "[w]hen the purported relevancy of past crimes is to identify the perpetrator of the crime being tried, we have required a close similarity of facts, a unique or `fingerprint' type of information, for the evidence to be relevant").
In State v. Rawls, 649 So.2d 1350, 1354 (Fla.1994), the court held that even in a nonfamilial context "similar fact evidence was properly admitted to corroborate [the victim's] testimony" concerning a sexual battery. The focus in Rawls was not on the level of similarity between the charged offense and the collateral acts but on similar acts evidence that was admissible for the purpose of corroborating a victim's testimony outside the familial context. In reaching its conclusion, the court quoted an observation made by Professor Ehrhardt concerning the rationale in Heuring:
"Although the Heuring opinion appears to limit its theory of admissibility of other act evidence to acts involving sexual battery within the familial context, its rationale may extend to the admission of sexual acts upon other children. The rationale would also seem to be applicable whenever the defense in a sexual battery prosecution is that the victim fabricated the incident, rather than that the wrong person has been charged."
Rawls, 649 So.2d at 1354 (quoting Charles W. Ehrhardt, Florida Evidence § 404.18 at 183-84 (1994 ed.) (footnotes omitted)). The Rawls court concluded that the "charged and collateral offenses committed by Rawls" were "`strikingly similar'" and "share[d] the unique combination of characteristics required to meet the strict standards of the Williams rule." 649 So.2d at 1353-54. The court therefore was not called on to address whether a relaxed standard of similarity could be applied in such a case of sexual battery outside the intrafamilial context.
In Saffor v. State, 660 So.2d 668, 671 (Fla.1995), the court recognized that in Heuring it had "discussed a relaxed standard of admissibility for familial sexual battery cases, but [had] not specifically *1203 address[ed] the question of how similar the charged offense and the collateral sex crime must be in order for the collateral crime evidence to be admissible." The court again addressed the issue without articulating a precise standard of similarity. The court did, however, state that the applicable standard "lies somewhere in between the stringent similarity requirement of the usual Williams rule case and the liberal similarity rule" that would allow the admission of collateral crime evidence of any sex crimes committed in the familial context. 660 So.2d at 671. The Saffor court held simply that in addition to showing that the collateral offense occurred within the familial context "[t]here must be some additional showing of similarity in order for the collateral sex crime evidence to be admissible." Id. at 672.
The court in Heuring, Rawls, and Saffor thus unequivocally states that the strict standard of relevance for evidence under section 90.404(2)(a)a standard requiring not only striking similarity but also unique distinguishing characteristicsis the standard generally applicable outside the context of intrafamilial sex crimes. And even more recently the court has cited the strict standard of similarity pronounced in Heuring in a case where it held that supposed similar facts evidence was not relevant to show the absence of mistake or accident. See Robertson, 829 So.2d at 909 (stating that "substantial similarity of crimes is a requirement when the evidence is sought to be admitted for the specific purpose of establishing absence of mistake or accident," citing Heuring, and holding that where charged crime involved murder of girlfriend using a handgun, collateral crime involving threat of violence against defendant's former wife using an assault rifle was not admissible). Yet the court has never applied that strict standard in a case where identity was not at issue to exclude similar acts evidence introduced to establish the defendant's modus operandi and thereby to corroborate the testimony of the victim that the defendant committed the offense. And there is an apparent tension between the rationale for the use of a relaxed standard of similarity expressed in Heuring, Rawls, and Saffor and application of the strict standard of similarity in other cases where the similar acts evidence is not offered to establish the identity of the perpetrator but to support the victim's credibility.
The justification for applying a relaxed standard of similarity focuses on the appropriateness of using similar acts evidence to support the credibility of a victim who testifies concerning an offense committed when the victim was alone with a person well known to the victim. The rationale for allowing such similar acts evidence is just as compelling when the context is a sexual assault by a physician on a patient in the privacy of the physician's examining room as it is when the context is a sexual assault by a parent on that parent's child in the privacy of the home. Indeed, the rationale is compelling in any context where a defendant who is well known to the victim has been accused of an offense and the critical issue is whether the victim's testimony regarding the offense is a fabrication.
In such circumstances, testimony of a third party that the defendant committed similar acts in the past has substantial probative force to rebut the defendant's contention that the victim's testimony is fabricated. See Richard A. Sanders, A Dangerous Bend in an Ancient Road: The Use of Similar Fact Evidence for Corroboration, 74 Fla. B.J. 40, 46 (2000) (criticizing logic of cases permitting similar fact evidence to corroborate victim testimony in child molestation cases and suggesting that appropriate rationale for admission of such evidence is that "it is objectively reasonable to conclude (on a *1204 nonpropensity basis) that the charged allegations are true because it is unlikely that more than one child would fabricate similar false allegations against the same person"). And there is no reason to believe that the probative value of such similar acts evidence would be "substantially outweighed by the danger of unfair prejudice," § 90.403, Fla. Stat., in every setting other than the context of intrafamilial sexual assault, see Morman v. State, 811 So.2d 714, 719 (Fla. 2d DCA 2002) (Altenbernd, J., concurring) (stating that if Williams rule evidence "is admissible under a relaxed standard in the family context when identity is not an issue, I am inclined to believe that it should be admissible under that same standard in most nonfamilial cases because its probative value and prejudicial effect is not significantly affected by the family context").
The statement of a broadly applied strict standard of similarity under the Williams rule finds no support in the original Williams decision itself. While acknowledging that "the question of the relevancy of [similar fact evidence] should be cautiously scrutinized before [the evidence] is determined to be admissible," the Williams court stated that "relevancy is the test," and that such evidence should be admitted "[i]f found to be relevant for any purpose save that of showing bad character or propensity." 110 So.2d at 662. The court in Williams stated that in considering the issue of collateral crimes evidence "we begin by thinking in terms of a rule of admissibility as contrasted to a rule of exclusion." 110 So.2d at 658. A major thrust of the opinion is its criticism of those who "disregard the basic principle of the admissibility of all relevant evidence having probative value in establishing a material issue." Id.
NOTES
[1] We note that the specific holding of Heuring has effectively been superseded by the adoption of section 90.404(2)(b)(1), Florida Statutes (2002), which provides that prior acts of child molestation are admissible in any criminal case where the defendant is charged with child molestation and that such evidence "may be considered for its bearing on any matter to which it is relevant." See also McLean v. State, 854 So.2d 796 (Fla. 2d DCA 2003) (upholding the constitutionality of section 90.404(2)(b) in child molestation cases where identity is not an issue).
[2] Williams v. State, 110 So.2d 654 (Fla.1959), codified as explained in, Kulling v. State, 827 So.2d 311, 314 (Fla. 2d DCA 2002).