*1227
 
 COHEN, J.
 

 Jim Bruce, Appellant, was charged, pursuant to section 794.011(5), Florida Statutes, with sexual battery for performing oral sex upon the victim, K.C. Following his conviction, Bruce appeals the admission of an attempted sexual battery he allegedly committed as similar fact evidence. We affirm.
 

 The State filed a notice of its intent to offer similar fact evidence from two witnesses, pursuant to section 90.404(2)(c), Florida Statutes. One witness, G.B., would testify about an attempted sexual battery that was the basis of a separate case. A second witness, D.L., would testify about uncharged allegations of wrongdoing. Following a pre-trial hearing, the trial court allowed the State to present the testimony of G.B.; however, it excluded the testimony of D.L. because it lacked similarity.
 

 At trial, the victim testified that she was a fifty-two-year old widow who attended College Park Baptist Church. She knew Bruce through her membership with the church and his role as a deacon. Shortly after the victim’s husband died, Bruce offered to help her with anything she needed done around her home. The victim hired him to perform repairs both inside and outside her home. While performing the repairs, Bruce and the victim discussed them spouses and the challenges that accompany caring for a spouse with physical disabilities. Bruce informed her that he had not had sex with his wife since an accident had rendered her disabled. During this time, Bruce also called and left messages telling the victim he loved her.
 

 Leading up to the incident that resulted in his arrest, the victim and Bruce ate lunch together on a day he was working in her home. During lunch, Bruce informed the victim that various women he performed work for found him attractive and “seemed to want him.” Although dismissing most of it as “boastful,” the victim reminded Bruce that he was married and needed to make his marriage work.
 

 Subsequently, Bruce called the victim indicating that he needed to talk to her. Arriving at her house, they began conversing and Bruce asked if she thought oral sex was sex and suggested that they both had needs that each could fulfill. In shock, the victim told Bruce it was time for him to leave and got up to open her door. As she walked past, Bruce grabbed her and threw her on the couch. Pinning her, Bruce fondled the victim’s breasts, removed her jeans, tore off her underwear, and began performing oral sex on her, despite the victim’s protestations he stop.
 

 Approximately one week later, Bruce left a Valentine’s Day card on her front door. When he called to see if she received it, the victim stated that they did not have a relationship and he should not have left the card. Subsequently, Bruce called and screamed at the victim, informing her that she was not to call him to do any more work, she left him high and dry, and she was a slut. Bruce later came to the victim’s work to inform her that another member had made accusations against him and that he would withdraw his membership in the church until the situation blew over.
 

 The State also presented the testimony of G.B., a fifty-two-year old recent divorcee who attended the same church as the victim. She first met Bruce when he performed work at her mother’s house during the spring and summer of 2007. G.B. subsequently asked Bruce to make repairs on her home. During this time, they developed a friendship. One common bond they shared and discussed was the personal impact caused by a loved one in poor health. At the time, G.B. was caring for
 
 *1228
 
 her mother who was suffering from hemo-lytic anemia. Bruce would call G.B. numerous times during the week to talk.
 

 The conduct which formed the basis of the similar fact evidence occurred when Bruce arrived at her home to work on her roof. Bruce was dirty from a previous job. Not wanting her carpet soiled, G.B. allowed Bruce to use her bathroom to shower and offered him a clean pair of shorts and t-shirt. While in the bathroom, Bruce called for G.B. When Bruce opened the bathroom door wearing only a t-shirt, G.B. closed the door, yelled at him, and retreated to her living room. Bruce walked into the living room with his erect penis exposed. Grabbing G.B., Bruce stated, “I’ve got to see those breasts” and began fondling them. G.B. fought him off and demanded that Bruce leave; he complied. After this incident, Bruce repeatedly left G.B. phone messages, apologizing and professing his love for her. Angry that she ignored his phone calls, Bruce appeared at G.B.’s house, kicking and banging on her front door, and demanded to talk to her.
 

 At trial, the issues of identity or lack of consent were not disputed. Instead, Bruce maintained each victim fabricated the allegations after he rejected their advances. Bruce admitted showering in G.B.’s home, but denied exposing himself to her. Rather, Bruce claimed G.B. had “come on to him” by asking him to take her to a St. Augustine motel and buy her some wine. He refused her advances. Likewise, Bruce claimed the victim initiated sexual overtures by sitting on his lap and kissing him. Although he admitted fondling her breasts and pulling her “britches” down, he denied any further sexual activity and claimed to have rebuffed her advances.
 
 [1]
 

 On appeal, Bruce claims error in the admission of the similar fact evidence, arguing its admission merely established bad character or propensity to commit the crime charged. Additionally, he argues the two incidents were not similar and because the offenses did not involve children, the relaxed requirement of similarity under section 90.404(2)(b) did not apply.
 

 Section 90.404(2)(a) provides:
 

 Similar fact evidence of other crimes, wrongs, or acts is admissible when relevant to prove a material fact in issue, including, but not limited to, proof of motive, opportunity, intent, preparation, plan, knowledge, identity, or absence of mistake or accident, but it is inadmissible when the evidence is relevant solely to prove bad character or propensity.
 

 We begin with the general premise that trial courts must use great caution in admitting evidence of collateral crimes. The potential for unfair prejudice is great. The fear is that a jury will convict based upon a defendant’s propensity, rather than the proof presented as to the charged offense.
 
 See Heuring v. State,
 
 513 So.2d 122 (Fla.1987). Accordingly, the courts employ a series of safeguards to insure a fair trial. These include preliminary findings that the defendant committed the prior act, the prior act is sufficiently similar with the charged act, and that the prior act’s relevance is not diminished by the lengthy passage of time. See
 
 Robertson v. State,
 
 829 So.2d 901, 907 (Fla.2002). The trial court must also exercise its discretion and find that the probative value of such evidence is not substantially outweighed by its unfair prejudicial impact.
 
 [2]
 

 Id.
 
 at 908.
 
 *1229
 
 The trial judge made the findings in this case and correctly admitted G.B.’s testimony while excluding D.L.’s.
 

 The victim’s and G.B.’s testimony demonstrated a clear pattern of conduct. The women were the same age, Bruce knew both women from church, and he knew both were single and lived alone. Bruce first befriended the women by performing handyman services and commiserating with each about the hardship of caring for a loved one with disabilities. During the course of performing handyman services, he not only made sexual advances but fondled the breasts of each. The only difference was that he successfully completed the sexual battery against the victim, but was unable to with G.B. Afterwards, he called both women expressing his love, then anger when they rejected his advances.
 

 The fact that Bruce did not raise consent or identity as a defense does not mean its admission only established bad character or propensity which would have required exclusion.
 
 See
 
 § 90.404(2)(a);
 
 Williams v. State,
 
 110 So.2d 654 (Fla. 1959). Rather, the similar fact evidence was relevant to corroborate the victim’s testimony and rebut Bruce’s claim of fabrication. Admitting similar fact evidence for this purpose has been addressed by a number of courts.
 

 In
 
 State v. Richman,
 
 861 So.2d 1195 (Fla. 2d DCA 2003), a rheumatologist was charged with sexual battery for acts committed on a patient. The State proffered the testimony of a number of former patients, each of whom claimed to have been sexually assaulted by-Richman. The trial court ultimately ruled the collateral crime evidence inadmissible and the State sought certiorari relief. Without specifically discussing the basis of its relevancy, the majority concluded that the proffered evidence met the fingerprint standard of admissibility enunciated in
 
 Kulling v. State,
 
 827 So.2d 311 (Fla. 2d DCA 2002). In a concurring opinion, now-Chief Justice Canady wrote to express his view that fingerprint-type similarity should not have been required and clarified the basis for the admission of the testimony. Canady explained:
 

 [T]he strict test set forth in
 
 Kulling
 
 is not appropriately applied ... where the identity of the defendant is not at issue. The rationale for requiring a heightened level of similarity in cases where the defendant is identified as the perpetrator based on collateral crimes involving the same modus operandi used in the charged offense is simply not applicable where the similar acts evidence is offered to corroborate the victim’s testimony that an offense occurred and to rebut the defendant’s contention that the victim’s testimony is fabricated.
 

 Rickman,
 
 861 So.2d at 1200.
 
 [3]
 

 See also Shapiro v. State,
 
 696 So.2d 1321 (Fla. 4th DCA 1997).
 

 In
 
 McLean v. State,
 
 934 So.2d 1248, 1251 (Fla.2006), the supreme court held that the admission of a prior collateral act of child molestation, pursuant to section 90.404(2)(b), Florida Statutes,
 
 [4]
 
 did not vio
 
 *1230
 
 late a defendant’s due process rights when the evidence was used to corroborate a victim’s testimony, rather than prove identity. The supreme court concluded that due process was “satisfied by weighing the probative value of the evidence of prior acts of child molestations against its potential for unfair prejudice.”
 
 Id.
 
 The supreme court recognized that relevancy under section 90.402 was not abrogated by the adoption of section 90.404(2)(b) and the relevancy of such evidence exists in its similarity to the charged offense.
 

 To provide guidance when weighing the probative versus unfair prejudicial value of prior acts of child molestation, the supreme court stressed that the “similarity of the collateral act of molestation and charged offense is a critical consideration ....”
 
 Id.
 
 at 1259. Thus, as the similarity between the prior act and the charged crime becomes more attenuated, it will not only be less relevant and less likely to be admissible, but it will be more likely that its unfair prejudicial value will substantially outweigh any probative value.
 
 Id.
 
 Further, when the evidence is admitted, the trial court must still instruct the jury, when requested, on the limited purpose for which it can be considered, and must prevent the evidence from becoming a central feature of the trial.
 

 In prosecuting Bruce, the State sought to admit the similar fact evidence pursuant to section 90.404(2)(a), rather than section 90.404(2)(b). This difference does not alter the relevancy of admitting the evidence to corroborate the victim’s testimony against a claim of fabrication. However, when offering similar fact evidence to establish a common scheme or plan for this purpose, the similarity between the charged crime and prior act is critical. As similarity decreases, the evidence’s relevancy will diminish and it will be more likely that the unfair prejudicial value will substantially outweigh any probative value. The converse will be true as the similarity between the prior act and charged crime increases. Of course, if the prior act evidence is admitted, the trial court must still ensure it does not become the focal point of the trial. Prior act evidence to corroborate the testimony of the victim in the face of a claim of fabrication is a relevancy issue. Because the line between corroboration and a defendant’s propensity can be thin, the admission of such testimony should be rare. In the present case, we find it was properly admitted.
 

 AFFIRMED.
 

 LAWSON, J., concurs.
 

 SAWAYA, J., concurs in result only, without opinion.
 

 [1]
 

 . Bruce's admissions are seemingly inconsistent with a claim of fabrication.
 

 [2]
 

 . Additionally, the jury is given a cautionary limiting instruction, if requested, and such evidence is prohibited from becoming the feature of the trial.
 

 [3]
 

 .
 
 Rickman
 
 does not address an earlier opinion from the same court,
 
 Foburg v. State,
 
 744 So.2d 1175 (Fla. 2d DCA 1999), wherein the court ruled the
 
 Williams
 
 rule evidence was not relevant to specific elements of the offenses for which Foburg was being tried because his defense was that the offenses did not occur. The factual circumstances in
 
 Fo-burg
 
 reflected the collateral crime evidence was not similar to the charged offense and were remote in time.
 
 See also Thomas v. State, 599
 
 So.2d 158 (Fla. 1st DCA 1992) (standing for the proposition that collateral crime evidence is not admissible to establish opportunity or common scheme unless either is a disputed issue at trial).
 

 [4]
 

 . Section 90.404(2)(b) provides:
 

 
 *1230
 
 1. In a criminal case in which the defendant is charged with a crime involving child molestation, evidence of the defendant's commission of other crimes, wrongs, or acts of child molestation is admissible, and may be considered for its bearing on any matter to which it is relevant.