DISTRICT COURT OF APPEAL OF FLORIDA
SECOND DISTRICT

_____

ANDREW JAMES LYDECKER,

Appellant,

v.

STATE OF FLORIDA,

Appellee.

No. 2D22-2489

_____

April 5, 2024

Appeal from the Circuit Court for Manatee County; Frederick P.
Mercurio, Judge.

Howard L. Dimmig, II, Public Defender, and A. Victoria Wiggins,
Assistant Public Defender, Bartow, for Appellant.

Ashley Moody, Attorney General, Tallahassee, and Jonathan P. Hurley,
Assistant Attorney General, Tampa, for Appellee.

SMITH, Judge.

Andrew James Lydecker challenges his convictions and sentences
for sexual battery by a person eighteen or older upon a child less than
twelve years old in violation of section 794.011(2)(a), Florida Statutes
(2019). Mr. Lydecker raises two issues on appeal. First, he argues the
trial court abused its discretion by limiting his cross-examination of one
of the victims under the rape shield statute. *See* § 794.022(2). Mr.

Lydecker also argues that the trial court erred in instructing the jury that it could consider the testimony from one victim as similar fact evidence relevant to the charges involving the other child. We find no error by the trial court in giving the jury instruction. However, because the trial court abused its discretion by limiting the cross-examination of G.G., we reverse Mr. Lydecker's conviction and sentence on count one and remand for a new trial on that count only.

I.

Mr. Lydecker was charged in 2019 with three counts of sexual battery by a person eighteen or older upon a child less than twelve years old. *See* § 794.011(2)(a). The victim in count one was G.G., a female born in 2003; the alleged offense occurred between December 1, 2010, and November 30, 2011. The victim in counts two and three was G.G.'s younger brother, P.G.; the dates of those offenses occurred between March 17, 2016, and March 16, 2018. The victims and their family were very close to Mr. Lydecker's family. Mr. Lydecker's sister was best friends with the victims' mother. G.G. and P.G. often slept over at the Lydecker house.

Mr. Lydecker chose not to sever the counts at trial for reasons that are not apparent in the record. Prior to opening statements an issue was brought to the trial court's attention concerning redactions the State made to G.G.'s recorded interview conducted by the child protective team (CPT) on September 30, 2019. Specifically, the State redacted portions of the CPT interview where G.G. discussed allegations of sexual abuse perpetrated by two other offenders. Mr. Lydecker argued that the jury should hear the unredacted CPT interview to support his defense that G.G. fabricated the allegations against him.

In June 2019 G.G. disclosed that the long-term boyfriend of Mr. Lydecker's sister had been molesting her over the course of many years. In July 2019 G.G. sat for a CPT forensic interview in Manatee County regarding this allegation against Ms. Lydecker's boyfriend. During that CPT interview G.G. was asked if anyone else had abused her. G.G. disclosed another incident involving her grandmother's boyfriend. G.G. was asked a second time if anyone had touched her inappropriately, and G.G. indicated that no one else had touched her inappropriately. G.G. did not disclose anything regarding Mr. Lydecker, even though she now alleges that Mr. Lydecker abused her sometime between 2010 and 2011, nearly nine years before the July 2019 CPT interview.

G.G.'s allegations against Ms. Lydecker's boyfriend caused a falling out between the families when Ms. Lydecker refused to believe G.G.'s allegations against her boyfriend. In August 2019 there was a family gathering at which the subject of G.G.'s allegations against Ms. Lydecker's boyfriend were being discussed. At that time, P.G. disclosed to his mother that Mr. Lydecker had inappropriately touched him. Upon P.G.'s disclosure, G.G. disclosed that she too had been a victim of Mr. Lydecker. These allegations against Mr. Lydecker resulted in a second CPT interview in September 2019, which is the interview at issue in this case. When asked if anyone else had abused her, G.G. again recounted the allegations against Ms. Lydecker's boyfriend and the grandmother's boyfriend. These are the statements that were redacted from the CPT interview to be played in Mr. Lydecker's trial.

The State argued that the allegations against the two other people were not relevant and should, therefore, be excluded under the rape shield statute. *See* § 794.022(2) ("Specific instances of prior consensual sexual activity between the victim and any person other than the

offender may not be admitted into evidence in a prosecution under s. 787.06, s. 794.011, or s. 800.04."). The trial court agreed, ruling that the State could play the redacted video and that Mr. Lydecker was prohibited from cross-examining G.G. regarding the allegations of other sex offenses made during the September 2019 CPT interview, subject to the State not opening the door to the other allegations.

At trial on cross-examination, G.G. was asked to clarify how she remembered when the incident with Mr. Lydecker occurred, and she responded, "because I know it was after my dad died and before another incident happened." Counsel for Mr. Lydecker asked for a sidebar conference arguing that G.G. opened the door to the evidence of her allegations of abuse by Ms. Lydecker's boyfriend and the grandmother's boyfriend. The trial court ruled that G.G. had not opened the door to the other allegations but allowed counsel to proffer G.G.'s testimony. In the proffered testimony, G.G. stated that in July 2019 she disclosed that Ms. Lydecker's boyfriend had abused her and, when asked if anyone else had touched her inappropriately, she disclosed an incident with her grandmother's boyfriend. G.G. testified that she was asked a second time if anyone else had touched her or if she disclosed that Mr. Lydecker had abused her, and she said no. She also testified that Ms. Lydecker did not believe G.G.'s allegations against her boyfriend and that after she made the allegations her family had no further contact with the Lydeckers.

## II.

Mr. Lydecker first argues the trial court abused its discretion by limiting his cross-examination regarding G.G.'s allegations against the other two men, the reason for the falling out between G.G.'s family and the Lydeckers, and the fact that she did not disclose any abuse by Mr.

4

Lydecker in the first CPT interview, all of which Mr. Lydecker sought to introduce in support of his defense to challenge the credibility of G.G.'s allegations against him.

This court reviews a trial court's limitation of cross-examination for an abuse of discretion. *McDuffie v. State*, 970 So. 2d 312, 324 (Fla. 2007). "A trial court's discretion in this area, however, is constrained by the rules of evidence and by recognition of a criminal defendant's Sixth Amendment rights." *Id.* (citation omitted). We review the trial court's interpretation of the evidence code and applicable law de novo. *See Hendricks v. State*, 34 So. 3d 819, 822 (Fla. 1st DCA 2010).

While the State argues, and the trial court agreed, that the evidence related to G.G.'s prior allegations was not admissible under the rape shield statute, the rape shield statute, by its express terms, only bars "evidence of specific instances of prior *consensual* activity between the victim and any person other than the offender in sexual battery cases." *McLean v. State*, 754 So. 2d 176, 182 (Fla. 2d DCA 2000) (emphasis added); *see also Thorne v. State*, 271 So. 3d 177, 184 (Fla. 1st DCA 2019) ("[T]he [r]ape [s]hield [statute] 'only relates to *consensual* sexual activity with a person other than the accused.' " (quoting *Gomez v. State*, 245 So. 3d 950, 953 (Fla. 4th DCA 2018))).

Here, there was nothing consensual about G.G.'s allegations against Ms. Lydecker's boyfriend or the grandmother's boyfriend. Nor did Mr. Lydecker proffer any evidence of G.G.'s consensual sexual acts. Instead, Mr. Lydecker proffered evidence that G.G. had disclosed two other instances of sexual abuse and when asked if anyone else had touched her she was silent about Mr. Lydecker despite this being a mere two months before the reporting of the alleged abuse by Mr. Lydecker, which happened years prior to the July 2019 CPT interview. *See Thorne,*

271 So. 3d at 184 (holding that "[b]ecause the proffered evidence was of the victim's allegations of nonconsensual conduct by other men, the [r]ape [s]hield [statute] did not apply" where appellant argued that the victim's accusing three men without accusing appellant tended to support his theory that the victim fabricated her allegations against him); *Gomez*, 245 So. 3d at 953 ("The appellant sought to introduce the victim's prior allegation against her employer of sexual assault. As the victim did not attribute this to prior consensual conduct, it does not fit within the rape shield [statute].").

Moreover, "[t]he rape shield [statute] does not exclude evidence that would otherwise be admissible under the Florida Evidence Code; instead, section 794.022 is a codification of Florida's relevance rules as applied to the sexual behavior of victims of sexual crimes." *Teachman v. State*, 264 So. 3d 242, 246 (Fla. 1st DCA 2019) (first citing *Carlyle v. State*, 945 So. 2d 540, 546 (Fla. 2d DCA 2006); and then citing *Kaplan v. State*, 451 So. 2d 1386, 1387 (Fla. 4th DCA 1984)). Accordingly, this "evidence was subject to the general rules of relevance." *Thorne*, 271 So. 3d at 184. Under section 90.608(2), Florida Statutes (2019), a party can attack the credibility of a witness by "[s]howing that the witness is biased." "Matters that demonstrate bias include prejudice, an interest in the outcome of a case, and any motivation for a witness to testify untruthfully." *Williams v. State*, 912 So. 2d 66, 68 (Fla. 4th DCA 2005). "The ability to expose an improper impetus for a witness' testimony is an essential component of the right to a jury trial." *Jones v. State*, 678 So. 2d 890, 892 (Fla. 4th DCA 1996). "[C]onsiderable latitude should be accorded a defendant in attempting to establish a witness's bias." *Fajardo v. State*, 193 So. 3d 1019, 1025 (Fla. 4th DCA 2016).

6

The trial court erroneously excluded G.G.'s CPT testimony regarding the July 2019 interview on the basis that it was barred by the rape shield statute. This is not a scenario where Mr. Lydecker was seeking to introduce any of G.G.'s consensual sexual activity. Rather, Mr. Lydecker sought to introduce this evidence to prove that G.G. was biased against his family and, by proxy, against him. The evidence that G.G. had previously disclosed two other incidents of sexual misconduct and did not disclose any allegations against Mr. Lydecker at that time and that the prior disclosure caused a falling out between the two families is relevant to show G.G. had a potential motive, bias, or interest in falsely accusing Mr. Lydecker of sexual battery. *See Alvarado-Contreras v. State*, 305 So. 3d 842, 845 (Fla. 2d DCA 2020).

The State contends that even if the trial court erred in limiting the cross-examination, the error was harmless. The State argues that while Mr. Lydecker was not allowed to tell the jury that there was a falling out between the families because of G.G.'s allegations against Ms. Lydecker's boyfriend, Mr. Lydecker was permitted to elicit testimony that there was a falling out between the families, which could be a reason why G.G. may lie about the accusations against Mr. Lydecker.

"As the beneficiary of the error, the State has the burden to show that the error was harmless." *Thorne*, 271 So. 3d at 184-85 (citing *State v. DiGuilio*, 491 So. 2d 1129, 1139 (Fla. 1986)). "An error cannot be harmless if guilt is not established by the evidence unrelated to the error." *McCall v. State*, 365 So. 3d 1253, 1258 (Fla. 1st DCA 2023) (emphasis omitted) (citing *Thorne*, 271 So. 3d at 185). Here, Mr. Lydecker's guilt was established almost exclusively on G.G.'s testimony, and therefore, her credibility was directly at issue. Thus, we cannot say that any error was harmless where "[t]he evidence was admissible, and,

7

considering the critical importance of the [victim's] credibility in this case." *Davis v. State*, 527 So. 2d 962, 963 (Fla. 5th DCA 1988). The jury should have been allowed to consider that G.G. previously disclosed that two other men had abused her, that she did not mention Mr. Lydecker's alleged abuse at that time, and that the falling out between the families was caused by G.G.'s initial disclosure—all of which a reasonable jury could have found to indicate that G.G. may have fabricated the allegations against Mr. Lydecker. By excluding this evidence, the trial court prevented Mr. Lydecker from "presenting a full and fair defense" as guaranteed by the constitution. *See Lewis v. State*, 591 So. 2d 922, 925 (Fla. 1991). This was error. But because this error only concerns the allegations related to G.G. and does not affect the evidence related to the counts regarding P.G., we reverse only count one as to G.G.[1]

III.

Mr. Lydecker also argues that the trial court erred in instructing the jury that it could consider the charges involving one child as similar fact evidence relevant to the charges involving the other child.

At issue here, the trial court gave Florida Standard Jury Instruction (Criminal) 3.8(a), as proposed by the State:

> Evidence of other crimes, wrongs, or acts. The evidence which has been admitted to show other crimes, wrongs or acts allegedly committed by the defendant will be considered by you only as that evidence relates to any relevant fact, including corroboration of the testimony of the victims.

The trial court also gave Florida Standard Jury Instruction (Criminal) 3.12(a), which is used when there is one defendant and multiple counts:

---

[1] Counsel for Mr. Lydecker conceded at oral argument that this argument only permits reversal as to count one, related to G.G.

8

> A separate crime is charged in each count of the information, and although they have been tried together, each crime and the evidence applicable to it must be considered separately and a separate verdict returned as to each. A finding of guilty or not guilty as to one crime must not affect your verdict as to the other crimes charged.

Mr. Lydecker contends that the "other crimes, wrongs or acts" instruction was erroneously given because there was no collateral crime evidence admitted and the instruction was confusing when read together with the "single defendant, multiple counts" instruction. "It is well established that a trial court has broad discretion in deciding whether to give or withhold a jury instruction." *Petrucelli v. State*, 855 So. 2d 150, 154 (Fla. 2d DCA 2003). We review the trial court's decision to give a jury instruction for an abuse of that discretion. *Burnette v. State*, 901 So. 2d 925, 928 (Fla. 2d DCA 2005). "Reversible error occurs when an instruction is not only an erroneous or incomplete statement of the law, but is also confusing or misleading." *Dockswell v. Bethesda Mem'l Hosp., Inc.*, 210 So. 3d 1201, 1214 (Fla. 2017) (quoting *Gross v. Lyons*, 721 So. 2d 304, 306 (Fla. 4th DCA 1998)).

The instruction given was an accurate statement of the law. *See* § 90.404(2)(b)1 ("In a criminal case in which the defendant is charged with a crime involving child molestation, evidence of the defendant's commission of other crimes, wrongs, or acts of child molestation is admissible and may be considered for its bearing on any matter to which it is relevant."). Mr. Lydecker is correct that, technically, there was no collateral crime evidence introduced in this case because he chose not to sever the counts involving G.G. from the counts involving P.G. And there is no dispute that the testimony from each child was properly admitted to support the charges related to each of them. But there can also be no dispute that prior acts evidence can be relevant, and properly admitted,

9

to corroborate a victim's testimony where the defendant contends the victim's testimony is fabricated. *See Bruce v. State*, 44 So. 3d 1225, 1230 (Fla. 5th DCA 2010) ("Prior act evidence to corroborate the testimony of the victim in the face of a claim of fabrication is a relevancy issue."); § 90.404(2)(b)1; *see also State v. Richman*, 861 So. 2d 1195, 1200-01 (Fla. 2d DCA 2003) (Canady, J., concurring).

Here, while the testimony of one victim related to the alleged acts perpetrated upon them by Mr. Lydecker was technically not *Williams*[2] rule evidence because it concerned charged conduct, not collateral bad acts, there is no reason why that testimony could not be considered as relevant evidence to corroborate the other child's testimony and to rebut Mr. Lydecker's claim of fabrication.[3] Accordingly, the trial court properly instructed the jury that it could consider the "other acts" testimony as it "relates to any relevant fact, including corroboration of the testimony of the victims."

Nor can we say that the giving of the "other acts" instruction together with the "single defendant, multiple counts" instruction was confusing. The "single defendant, multiple counts" instruction provides:

> A separate crime is charged in each count of the information, and although they have been tried together each crime and

---

[2] *Williams v. State*, 110 So. 2d 654 (Fla. 1959).

[3] We note that this is an unusual case due to the defense's decision to try these counts together and not to sever the charges, which resulted in confusion as to whether the "evidence of other crimes, wrong, or acts" instruction was applicable. However, because the instruction, as given, was a proper statement of the law, regardless of whether the "other acts" were collateral to the charged offenses, there was no abuse of discretion in giving the instruction. *See White v. State*, 817 So. 2d 799, 806 (Fla. 2002) ("Discretion is abused only when the judicial action is arbitrary, fanciful, or unreasonable, which is another way of saying that discretion is abused only where no reasonable person would take the view adopted by the trial court.").

> the evidence applicable to it must be considered separately and a separate verdict returned as to each. A finding of guilty or not guilty as to one crime must not affect your verdict as to the other crimes charged.

Fla. Std. Jury Instr. (Crim.) 3.12(a).

A jury could not reasonably be confused by the instruction that requires each count to be proven independently, while also bearing in mind that it was permitted to consider each victim's testimony as relevant to corroborate the other victim's testimony. Contrary to Mr. Lydecker's argument, these instructions are not inconsistent, but instead go hand-in-hand to explain to the jury how it could properly use the similar facts testimony when contemplating each individual count.

Because the jury instructions correctly instructed the jury and were not confusing, there was no abuse of discretion. Though count one was reversed on a different basis, we affirm Mr. Lydecker's remaining convictions and sentences on this ground.[4]

### IV.

Because the trial court erred in limiting the cross-examination of G.G., the conviction and sentence for count one is reversed and remanded for a new trial. The convictions and sentences arising from the charges related to P.G. in Counts II and III are affirmed.

Affirmed in part, reversed in part, and remanded.

MORRIS and LUCAS, JJ., Concur.

_____

Opinion subject to revision prior to official publication.

_____

[4] Mr. Lydecker does not raise any other issues regarding the counts related to P.G.; therefore, those convictions and sentences are affirmed without further comment.

11